Ogden M. SHERWOOD, Plaintiff,

v.

UNITED STATES of America and Thomas E. Scanlon, District Director of Internal Revenue for the Eastern District of New York, Defendants.

UNITED STATES of America, Plaintiff,

v.

John MULLER and Leonardo Casanova, Defendants.

Nos. 62-C-896, 63-C-805.

United States District Court
E. D. New York.

June 23, 1965.

M. Francis Bravman, New York City, for plaintiff Ogden M. Sherwood; Charles L. Kades, Robert G. Desmond, Joseph A. McCue, New York City, of counsel.

Joseph P. Hoey, U. S. Atty., Eastern Dist. of New York, Brooklyn, N. Y., for United States and Thomas E. Scanlon, District Director of Internal Revenue for Eastern Dist. of New York; Barry Bloom, Asst. U. S. Atty., James N. McCune, Atty., Dept. of Justice, of counsel.

John F. Woog, Garden City, N. Y., for defendant John Muller.

Atwood C. Wolf, Jr., New York City, for defendant Leonardo Casanova.

BARTELS, District Judge.

This is a consolidation of two cases arising out of a joint and several 100% penalty assessment by the Government under Sections 6671 and 6672[1] of the

---

1. § 6671. "(a) Penalty assessed as tax. —The penalties and liabilities provided by this subchapter shall be paid upon notice and demand by the Secretary or his

Internal Revenue Code of 1954, 26 U.S. C.A., against John Muller (Muller), president, Ogden M. Sherwood (Sherwood), secretary and treasurer, and Leonardo Casanova (Casanova), a major stockholder and employee, of Gillmors, Inc. (Gillmors) as responsible persons liable for the employees' withheld income taxes and Federal Insurance Contributions Act (FICA) taxes not paid to the Government for the first and second quarters of 1957.

Sherwood instituted a suit against the Government to collect a refund of $47.14, one unit of the assessment made against him and to quiet title to a trust fund against which Federal tax liens had been filed, to which suit the Government filed a counterclaim for $40,700.64. The other action was instituted by the Government against Muller and Casanova to collect penalty assessments of the same sum. The same corporation and the same issue being involved in both suits, the two cases were consolidated.

The contested issue is whether Muller, Sherwood and Casanova are liable under Sections 6671 and 6672 of the Internal Revenue Code of 1954 as persons charged with the duty to collect the taxes specified, and whether their failure to do so was willful.

After hearing the testimony and examining the exhibits and the proposed findings of fact and conclusions of law submitted by counsel, the Court makes the following findings of fact and conclusions of law:

> delegate, and shall be assessed and collected in the same manner as taxes. Except as otherwise provided, any reference in this title to 'tax' imposed by this title shall be deemed also to refer to the penalties and liabilities provided by this subchapter.
>
> (b) Person defined.—The term 'person', as used in this subchapter, includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs."

## Findings of Fact

1. Muller was president of Gillmors during the first and second quarters of 1957 but became sick on June 7, 1957 and did not act in that capacity thereafter. Muller was the chief executive officer and general manager with authority to borrow money and to sign checks without a counter-signature.

2. William S. Gillmor was assistant to the president during the first and second quarters of 1957 and after the president's illness on June 7, 1957, acted as the chief executive officer of Gillmors.

3. Sherwood was secretary and treasurer of Gillmors during the first and second quarters of 1957 and was authorized to sign checks in payment of bills without a counter-signature.

4. Casanova was a major stockholder of Gillmors but held no executive position and did not interfere with the control and management of Gillmors by its officers. He made loans to Gillmors and acted as its salesman but had no knowledge that the withholding taxes due to the Government had not been paid, and he exercised no authority as to payment of creditors and taxes owed by Gillmors or in any other way participated in the decision making process.

5. During the first six months of 1957 Gillmors had a "revolving credit account" with the Long Island National Bank of Hicksville (Bank), whereby loans were made to Gillmors upon promissory notes which were secured by a pledge of accounts receivable as collateral. The cash and checks taken to the Bank by Sher-

> § 6672. "Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable."

wood, Muller and William S. Gillmor were applied by the Bank to the reduction of the principal amount of the loan. Sherwood was authorized to sign assignments of accounts receivable given as collateral for the loans, and to collect accounts receivable and to carry invoices and records of indebtedness and checks from customers to the Bank. All checks from Gillmors' customers were deposited by the Bank in a special account and applied in reduction of the loans and all credits in the regular checking account of Gillmors were the net proceeds of the loans made by the Bank. All deposits in the general account originated from loans advanced, so that all checks brought to the Bank by Gillmors went through the loan account. All deposit slips in both accounts were written and prepared by Joseph A. Reinhardt (Reinhardt), the Bank's cashier.

6. On April 30, 1957 Sherwood signed the Employer's Quarterly Federal Tax Return (Form 941) prepared by the bookkeeper Rose Schober, showing income and FICA taxes for the first quarter of 1957 of $23,864.14, and also a corporate check on the Bank payable to the District Director of Internal Revenue for $23,864.14, for which there were not to his knowledge sufficient funds in the Bank.

7. On May 8, 1957 Sherwood notified Muller of the insufficiency of funds in the checking account with the Bank to cover said check, whereupon Muller, in the company of William S. Gillmor, borrowed $25,000 from the Amsterdam Overseas Corporation. This check was deposited in the Bank and Reinhardt credited the amount against Gillmors' loan and did not place it in the general account. On May 10, 1957 there were available to Gillmors additional loans from the Bank of approximately $35,000. On May 10, 1957 the Bank advanced to Gillmors $24,000, and on May 24, 1957 another $23,400, against Gillmors' notes. These funds were ample to pay the Government if Muller so chose.

8. On May 24, 1957 the check of April 30, 1957 for $23,864.14 payable to the District Director of Internal Revenue, was presented to the Bank, at which time the balance in Gillmors' account was only $10,070. Thereupon Reinhardt notified Muller of the deficiency and the latter ordered Reinhardt to stop payment on the check.

9. In the first week of June of 1957 Sherwood and William S. Gillmor, at the direction of Muller, obtained a 45-day extension of time from the District Director of Internal Revenue within which to pay the 1957 first quarter withholding taxes.

10. In June of 1957 William S. Gillmor notified Casanova that Gillmors was insolvent and on July 3, 1957 Muller and Sherwood were discharged. On August 11, 1957 an involuntary petition in bankruptcy was filed against Gillmors and subsequently Gillmors was adjudicated a bankrupt.

11. Muller as president, chief executive officer and manager of Gillmors made the final decisions as to what creditors and what taxes should or should not be paid.

12. Although Sherwood was secretary and treasurer and signed checks and Federal and State tax returns, he was a subordinate officer whose activities were subject to the dictates of Muller, president and chief executive officer, and while Muller obtained information and cooperation from Sherwood from time to time, Sherwood had no authority to make decisions as to what creditors or what taxes should or should not be paid.

13. At no time after April 30, 1957 did the officers of Gillmors deposit in trust as required by 26 U.S.C.A. §§ 6302, 6656 and 7501 and Federal Tax Regulations §§ 31.6302(c) (1) and 301.6656–1, the withholding taxes collected from the employees during April and May, 1957. After payment on the April 30, 1957 check to the order of the District Director of Internal Revenue was stopped by Muller, other creditors, including employees, were paid by Gillmors. Income and FICA taxes withheld from the wages of Gillmors' employees for the month of

April, 1957 amounted to $5,649.50, and for the month of May, 1957, $7,378.30, totalling $13,027.80. Such taxes together with the income taxes and FICA taxes withheld from the wages of the employees of Gillmors, aggregating $23,864.14 for the first quarter of 1957, totalling $36,-891.94, were not paid to the Government.

14. No evidence was adduced to prove the amount of withholding taxes which were due and payable for the month of June, 1957.

15. The Government's second quarter assessment for income and FICA taxes against Gillmors in the amount of $23,-864.14 was arbitrary and based upon the undisputed amount of taxes due for the first quarter of 1957.

*Pertinent Procedure regarding the assessment of the penalty against Muller, Sherwood and Casanova*

16. In October of 1959 the District Director of Internal Revenue mailed the customary 10-day letters to Muller, Casanova and Sherwood notifying each of them, among other things, of the 100% penalty proposed to be assessed against them with respect to said withholding taxes in the sum of $62,049.15.

17. On December 20, 1960 the District Director of Internal Revenue delivered to Muller and Sherwood a letter notifying them of proposed assessments of a 100% penalty and granting them 30 days within which to protest.

18. On December 21, 1960 the District Director of Internal Revenue delivered a letter to Casanova enclosing a copy of a report of a conference held on November 10, 1959 with him and advising him of the proposed assessment and granting him 30 days within which to protest.

19. Subsequently, Muller, Sherwood and Casanova filed a protest to the 30-day letter and requested a conference with the Appellate Division of the Regional Commissioner's Office.

20. After a conference on February 1, 1961, at the Collection Division Level, Muller, Casanova and Sherwood received on February 8, 1961 a letter from the District Director of Internal Revenue stating that if they did not agree with the proposed assessment they had the right within 30 days from the date thereof in which to file a protest and that if no written protest was filed within 30 days the District Director would proceed with the assessment of the penalty and issue a bill for the amount due.

21. On March 3, 1961 the District Director of Internal Revenue made a penalty assessment against Muller, Casanova and Sherwood jointly pursuant to Sections 6671 and 6672 of the Internal Revenue Code of 1954 in the amount of $62,047.92 and at the same time made a written demand for payment thereof.

22. Subsequent to the assessment, the taxpayers' delinquent accounts were forwarded to the Glen Cove office of the Internal Revenue Service for collection.

23. On March 7, 1961 letters (the L-24 letters) were forwarded and received by Muller, Casanova and Sherwood notifying them that previous written demands upon them for payment of the Federal tax liability therein shown remained unpaid and that Federal tax liens and seizure of the taxpayers' property were authorized by the Internal Revenue Code to satisfy payment thereof.

24. After subsequent conferences between Muller, Sherwood and Casanova and the Appellate Division of the Regional Commissioner's Office, the latter abated $20,682.64 of said assessment, representing the third quarter withholding taxes for 1957.

25. Thereafter Sherwood brought an action for a refund and to quiet title to beneficiary payments of a trust, to which the Government counterclaimed for the 100% penalty assessment. Subsequently an action was instituted by the Government against Muller and Casanova to collect the 100% penalty assessment, and the two cases were consolidated on October 9, 1963.

*Conclusions of Law*

1. This Court has jurisdiction over this action by virtue of 28 U.S.C.A. §§ 1340 and 1346(a) (1).

2. The taxpayers had the burden of proving that the Commissioner's assessment was erroneous. Horwitz v. United States, 2 Cir. 1965, 339 F.2d 877; United States v. Lease, 2 Cir. 1965, 346 F.2d 696; see also United States v. Molitor, 9 Cir. 1964, 337 F.2d 917.

3. Muller, as president and chief executive officer of Gillmors, was a "person required to collect, truthfully account for, and pay over" withheld income and FICA taxes within the meaning of Section 6672 of the Internal Revenue Code of 1954. However, Muller being incapacitated by illness on and after June 7, 1957 to the date of his discharge on July 3, 1957, during which time William S. Gillmor acted in his place and stead, was not under a duty "to collect, truthfully account for, and pay over" withheld income and FICA taxes within the meaning of Section 6672 of the Internal Revenue Code of 1954 for said period. Even if he was under such duty, his failure during said period to make the required payment of taxes to the Government was not willful.

4. Muller's failure to cause payment to the United States of income and FICA taxes for the first quarter of 1957 in the amount of $23,864.14 was willful within the meaning of Section 6672 of the Internal Revenue Code of 1954.

5. Muller's failure to deposit in trust as required by 26 U.S.C.A. §§ 6302, 6656 and 7501 and Federal Tax Regulations §§ 31.6302(c) (1) and 301.6656–1 of the income and FICA taxes collected from Gillmors' employees during the months of April and May, 1957, was willful within the meaning of Section 6672 of the Internal Revenue Code of 1954.

6. Sherwood was not a person who was under a duty "to collect, truthfully account for, and pay over" withheld income and FICA taxes within the meaning of Section 6672 of the Internal Revenue Code of 1954. Not having the authority or the capacity to make decisions as to what creditors and what taxes should be paid, his failure to make payment to the Government or to deposit in trust the income and FICA taxes collected from Gillmors' employees during the first and second quarters of 1957, was not willful.

7. Casanova, as a major stockholder and salesman of Gillmors, neither had nor exercised any authority as to the payment of creditors and taxes owed by Gillmors or in any other way participated in the decision making process and, consequently, was not a person under a duty "to collect, truthfully account for, and pay over" withheld income and FICA taxes within the meaning of Section 6672 of the Internal Revenue Code of 1954.

8. Procedurally, the penalty assessments against Muller, Sherwood and Casanova were in all respects valid and enforceable. See 26 Code of Federal Regulations § 601.106; Revenue Procedure 57–26 1957–2 Cum.Bull. 1093, as amplified in Revenue Procedure 61–27 1961–2 Cum.Bull. 563. Moreover, the procedural rules claimed to have been violated (including those alleged to have been infringed because of the imposition of penalty assessments on March 3, 1961 less than 30 days from the date of the February 8, 1961 letter) do not have the force and effect of statutory law. Luhring v. Glotzbach, 4 Cir. 1962, 304 F.2d 560. The case of United States v. Walker, W.D.S.Car.1963, 217 F.Supp. 888, is inapposite because the prohibition there was statutory.

9. The record, including the course of dealing between the Government and Muller, Sherwood and Casanova, clearly established that the notice and demand requirements of 26 U.S.C.A. § 6671 for the payment of penalties and liabilities were satisfied. See United States v. O'Connor, 2 Cir. 1961, 291 F.2d 520, 100 A.L.R.2d 858; In re Baltimore Pearl Hominy Co., 4 Cir. 1925, 5 F.2d 553. The failure to satisfy said notice and demand requirements would not at all events have affected the assessments but would have affected only the levy. Jenkins v. Smith, 2 Cir. 1938, 99 F.2d 827; United States v. Erie Forge Co., 3 Cir. 1951, 191 F.2d 627, cert. denied, 343 U.S.

930, 72 S.Ct. 759, 96 L.Ed. 1339; 9 Mertens Law of Federal Income Taxation § 49.187.

### Discussion

The pattern of this case is not unusual. Congress could have charged each principal officer of the corporation with personal responsibility for willful failure to pay withholding taxes. It is doubtful whether such an obligation would have been too harsh since service as a corporate officer is not compulsory. Certainly, enforcement would have been much simpler and easier. But Congress did not so enact. Instead, the statute predicates liability upon any person as officer, employee, or member who is under a duty to make such payment and willfully fails to do so.

The decisive question at issue in this case is the meaning of the term "willful" as used in 26 U.S.C.A. § 6672. As said in Frazier v. United States, 5 Cir. 1962, 304 F.2d 528, 529, the term "has been smothered with a maze of semantics". However, it is clear that "willful" as used in the context of the section, does not require a person to have bad motives or to be guilty of fraud. Bloom v. United States, 9 Cir. 1959, 272 F.2d 215, cert. denied, 1960, 363 U.S. 803, 80 S.Ct. 1236, 4 L.Ed.2d 1146. It is sufficient if the officer or other person charged with the responsibility, intentionally, knowingly and voluntarily fails to perform his obligation of paying to the Government the withholding taxes but, instead, pays other creditors of the corporation. Bloom v. United States, supra; Flan v. United States, 7 Cir. 1964, 326 F.2d 356. Muller, as president, had the duty to make the payment and with full knowledge of the financial condition of the corporation chose to pay other creditors and to default upon his obligation to the Government. Under the circumstances his default was willful.

Referring specifically to the second quarter of 1957, it was Muller's duty as president of the corporation, under 26 U.S.C.A. §§ 6302, 6656 and 7501 and Federal Tax Regulations §§ 31.6302(c) (1) and 301.6656–1, to deposit with an authorized Government depositary, within 15 days of the close of each calendar month,[2] the amount of income and FICA taxes withheld from the wages of the corporation's employees and to receive, in exchange therefor, Federal Depositary Receipts, which could be used as payment for said taxes. The fact that the taxes were not payable by the corporation to the Director of Internal Revenue until July 31, 1957, did not relieve the corporation and, hence, Muller of the duty to make the deposits during the interim. The failure of Muller to do so was voluntary and willful and subjected him to the risk of his present liability in case the corporation was unable to make payment in full on the due date. He speculated on the corporation's ability to raise the necessary funds on the due date and he lost. See Tiffany v. United States, D.N. J.1963, 228 F.Supp. 700; Paddock v. Siemoneit, 1949, 147 Tex. 571, 218 S.W.2d 428, 436, 7 A.L.R.2d 1062. During his illness, however, Muller was not in a position to act with respect to the corporation's financial condition or to make any decisions concerning payment to creditors. His failure to withhold or pay during such period was therefore not willful.

Ordinarily, a secretary and treasurer of a corporation is a person whose position would charge him with the duty to pay withholding taxes. But here Sherwood acted only in a subordinate capacity performing only clerical services and having no voice in the policy or decision making process. He was not a person who had authority to determine which creditors should or should not be paid. Not having the authority to pay, it cannot be said that his failure to pay the withholding taxes was intentional or willful. See Campbell v. Nixon, E.D.Mich. 1962, 207 F.Supp. 826; Crampton, The

---

2. For the last month of the calendar quarter the employer has the option of making the deposit or of including the sum in his direct remittance to the District Director upon the due date.

100 Percent Penalty on a 'Responsible Officer', N.Y.U. 21st Inst. on Fed. Tax. 117; cf., Paisner v. O'Connell, D.C.R.I. 1962, 208 F.Supp. 397.

The Government's claim that the District Director of Internal Revenue should be dropped in the refund suit because of lack of jurisdiction, is without merit. The District Director of Internal Revenue is being sued under 28 U.S.C.A. § 1346 as an agent of the United States and is not deemed to be a new party to the action. Consequently, the action, as a matter of substance, is a single action against the Government. French v. United States, E.D.N.Y.1960, 180 F.Supp. 773, 775; Wolinsky v. United States, 2 Cir. 1959, 271 F.2d 865.

The invalidity of the penalty assessment against Sherwood makes it unnecessary to inquire as to the jurisdiction of this Court under 28 U.S.C.A. §§ 1340 and 2410 to remove a cloud on Sherwood's title to the trust fund subjected to the lien and levy assessed by the Government. Cf., Falik v. United States, 2 Cir. 1965, 343 F.2d 38.

Judgment in accordance herewith may be entered on two (2) days' notice.