UNITED STATES of America, Plaintiff,

v.

ASSOCIATES COMMERCIAL CORPORATION, formerly known as Associates Capital, Inc., Defendant.

No. 82 C 1451.

United States District Court, N. D. Illinois, E. D.

Sept. 30, 1982.

James K. Wilkens, Trial Atty., Tax Div., Dept. of Justice, Washington, D. C., for plaintiff.

Mark J. Lieberman, Chicago, Ill., Eugene I. Meyers, Vice President & Senior Tax Counsel, Steven J. Gombinski, Gulf & Western Inds., New York City, of counsel, for defendant.

## MEMORANDUM OPINION

WILL, District Judge.

### I. BACKGROUND FACTS

In 1972, defendant, Associates Capital Corporation (hereinafter "Associates"), first began advancing money to Dot Engravers, Inc. (hereinafter "Dot") pursuant to a continuing accounts receivable financing agreement. Under that arrangement Associates advanced Dot cash equal to a fixed percentage of the face amount of Dot's accounts receivables, taking in return such receivables as collateral.

Having encountered severe financial difficulty by mid-1974, Dot, on September 14, 1974, entered into two contracts with Color Associates (hereinafter "Color"), a company which, like Dot, was engaged in the graphic arts business. Under these contracts Color took over complete control of the management of Dot and also loaned Dot $50,000. Pursuant to the management agreement Color basically directed the affairs of Dot until the end of October 1974, when, despite the fact that the management agreement technically remained in force, Color ceased its active role in the management of Dot.

Following Color's departure, Dot's former management resumed managing the operations of Dot. Associates subsequently stopped advancing the funds to Dot, which ceased operations and filed a voluntary petition in bankruptcy under Title 11 of the United States Code on December 19, 1975. An adjudication of bankruptcy was made by the Court on March 13, 1976.

On December 22, 1975, the United States made an assessment against Dot for its failure to pay over withheld federal income taxes and Federal Insurance Contribution Act taxes for the third quarter of 1975 (July 1, 1975 to September 30, 1975). On March 15, 1976, the United States made a further assessment against Dot for its failure to pay over to the United States such taxes for the fourth quarter of 1975 (October 1, 1975 to December 31, 1975). Dot was properly given, in a timely manner by the Internal Revenue Service, formal notice and demand for payment of such taxes.

On March 8, 1982, the United States first commenced action against Associates with regard to the still outstanding balance due (plus interest) which Dot failed to pay the government, alleging liability against Associates pursuant to § 3505(b) of the Internal Revenue Code of 1954, as amended. The United States brought the instant action against the defendant, alleging that the defendant advanced funds to Dot during this period with the knowledge that Dot would not pay the employment taxes.

The defendant has now filed a motion to dismiss this action for the reasons that the defendant was given no formal notice with respect to this liability and that the statute of limitations has allegedly expired on the liability relating to the third quarter of 1975. The United States opposes this motion.

## II. NOTICE UNDER SECTION 6303

Defendant's first contention is that the government's failure to provide it with notice under section 6303(a) of the Internal Revenue Code and the applicable regulations of the assessment made against Dot on December 22, 1975 covering Dot's failure to pay withheld federal income taxes and F.I.C.A. taxes for the third and fourth quarters of 1975 precludes this action to recover the tax imposed by section 3505(b). Sections 3505(b) and 6303(a) provide:

"SEC. 3505.  LIABILITY OF THIRD PARTIES PAYING OR PROVIDING FOR WAGES.

\*      \*      \*      \*      \*      \*

(b) *Personal Liability Where Funds Are Supplied.*—If a lender, surety, or other person supplies funds to or for the account of an employer for the specific purpose of paying wages of the employees of such employer, with actual notice or knowledge (within the meaning of section 6323(i)(1)) that such employer does not intend to or will not be able to make timely payment or deposit of the amounts of tax required by this subtitle to be deducted and withheld by such employer from such wages, such lender, surety, or other person shall be liable in his own person and estate to the United States in a sum equal to the taxes (together with interest) which are not paid over to the United States by such employer with respect to such wages. However, the liability of such lender, surety, or other person shall be limited to an amount equal to 25 percent of the amount so supplied to or for the account of such employer for such purpose.

(c) *Effect of payment.*—Any amounts paid to the United States pursuant to this section shall be credited against the liability of the employer."

"SEC. 6303.  NOTICE AND DEMAND FOR TAX.

(a) *General Rule.*—Where it is not otherwise provided by this title, the Secretary shall, as soon as practicable, and within 60 days, after the making of an assessment of a tax pursuant to section 6203, give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof. Such notice shall be left at the dwelling or usual place of business of such person or shall be sent by mail to such person's last known address."

Defendant acknowledges that section 3505(b) makes lenders liable for withholding taxes of a borrower-employer if they lend money for "the specific purpose of paying wages" of the borrower's employees and if at the time of lending they have "actual notice or knowledge (within the meaning of section 6323(i)(1)) that such employer does not intend to or will not be able to make timely payment or deposit" of the withholding taxes on the wages to be paid with the money lent. The lender's liability is limited to up to 25% of the amount lent. It contends, however, that both the statutes and the applicable regulations make it clear that notice must be given "to each person liable for the unpaid tax." Since it is conceded that no notice of the assessment against Dot was ever given defendant and that the defendant was not aware of its possible liability for more than nine years after it made its loans to Dot, defendant contends that both in law and in equity it is entitled to have this action dismissed.

The plaintiff, on the other hand, asserts that there is no requirement that notice of an assessment against a borrower be given to a lender before a collection action may be brought under section 3505(b) against the lender. In support of that contention, it cites the recent decision in *United States v. Marine Midland Bank,* 544 F.Supp. 268 (W.D.N.Y.1982). The court there held that, since no separate assessment against a lender is required by section 3505(b), no notice to a lender is required by section 6303(a).

■ While we have the highest regard for Judge Curtin who reached that conclusion, we disagree. The precise language of section 6303(a) provides that "the Secretary shall, as soon as practicable, and within 60 days, after the making of an assessment of a tax pursuant to section 6203, give notice to *each person liable for the unpaid tax,* stating the amount and demanding payment thereof." [Emphasis added.] Defendant is, under section 3505(b), allegedly a "person liable for the unpaid tax" owed by Dot. That section specifies that a lender who lends money to an employer specifically to be used to pay wages and at the time knows that the borrower-employer "does not intend to or will not be able to make timely payment or deposit of the amounts of tax required . . ., such lender, . . . shall be liable in his own person" for the unpaid taxes plus interest up to 25% of the amount loaned by the lender to the employer.

■ Under the plain language of the two sections, it seems clear that (1) the defendant may be liable under section 3505(b) for the withholding tax Dot failed to pay if it lent money to Dot specifically to pay wages knowing that Dot could not or would not make payment of withholding taxes and (2) under section 6303(a) defendant, if liable for the unpaid tax, was entitled to notice of the assessment thereof. Not only does that conclusion appear to be compelled by a reading of the applicable provisions of the Internal Revenue Code but by common sense. The defendant here did not learn until more than nine years after it lent money to Dot and more than six years after the assessment was made that the government would seek to recover Dot's unpaid taxes from it. The possibility of prejudice is obvious. Records and personnel may no longer be available. The opportunity to mitigate by making voluntary payments is lost. Interest mounts. The possibility of recovering from the borrower-employer diminishes. All of these would be obviated by notice.

■ The government urges that the defendant must have been aware that it was liable for the taxes here involved because it was aware of Dot's financial condition and that the government's claim for these taxes had not been paid in the bankruptcy proceedings. Such knowledge, however, does not automatically create liability in a lender. Section 3505(b) makes the lender liable only if it "supplies funds to or for the account of an employer for the specific purpose of paying wages of the employees of the employer, with actual notice or knowledge . . . that such employer does not intend to or will not be able to make timely payment . . . of the withholding tax applicable to such wages." Accordingly, the mere fact that a lender is aware

as a result of bankruptcy proceedings that the government has filed a claim for unpaid withholding taxes is hardly notice to the lender that the government will seek to hold it liable under section 3505(b) and that it should (in the words of the government's brief) "have taken whatever steps it felt necessary to protect itself."

It seems apparent to us that most lenders will not either lend "for the specific purpose of paying wages" or have knowledge at the time of lending that the borrower-employer "does not intend to or will not be able" to pay the withholding tax on wages paid from moneys lent for the specific purpose of paying wages. We do not know whether or not the evidence in this case will bring the defendant within the fairly narrow purview of section 3505(b). Whether it will or not, a lender is entitled, as are other persons whom the government seeks to hold liable for withholding taxes, to notice that an assessment has been made and the person in question is one whom the government will seek to hold liable for its payment.

The government contends that the notice required by section 6303(a) is a condition precedent only to enable it to levy, file a lien or collect interest on certain penalties under sections 6331(a), 6321 and 6601(e)(3). It cites no authority for that limitation on section 6303(a) arguing only that, since each of the sections in question specifically prohibits actions under it without the requisite notice, an action to enforce the liability created by section 3505(b) does not require such notice.[1] Apparently the government's position is that if it sought to levy, file a lien or collect interest on certain penalties against the defendant, it would be barred by the failure to give notice but that a collection suit is not barred by the same failure. This distinction makes little sense. The duty to give notice set forth in section 6303(a) makes no such distinction and the

reasons for requiring notice are substantially the same in all instances. The person against whom the government is claiming is entitled to reasonable notice of that fact and not to discover it years later when it may be seriously prejudiced either in its defense, the amount claimed or the opportunity to recover from the persons primarily liable.

## III. THE STATUTE OF LIMITATIONS

The defendant also contends that the six-year statute of limitations set forth in section 6502(a)(1) of the Internal Revenue Code ran prior to the filing of this suit. That section provides:

"SEC. 6502. COLLECTION AFTER ASSESSMENT.

(a) *Length of Period.*—Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun—

(1) within 6 years after the assessment of the tax. . . ."

The dates of the assessment and the filing of this action are undisputed. The assessment was made on December 22, 1975 and suit was commenced on March 8, 1982, some two and one-half months after the six-year statute of limitations would normally have run.

The government contends that section 6503(b) tolled the normal running of the statute. That section provides:

"SEC. 6503. SUSPENSION OF RUNNING OF PERIOD OF LIMITATION.

\*   \*   \*   \*   \*   \*

(b) *Assets of Taxpayer in Control or Custody of Court.*—The period of limitation on collection after assessment pre-

---

1. It should be noted that section 3505(b) does not authorize the government to take any action. It merely defines under what facts a liability for tax may arise. The procedural requirements for establishing and acting to enforce such a liability are set forth in Subtitle F

of the Internal Revenue Code, §§ 6001 to 7852, which includes §§ 6331(a), 6321 and 6601(e)(3). The absence of any reference to notice in § 3505(b), therefore, creates no inference as to the interpretation of § 6303(a).

scribed in section 6502 shall be suspended for the period the assets of the taxpayer are in the control or custody of the court in any proceeding before any court of the United States or of any State or of the District of Columbia, and for 6 months thereafter."

It reasons that the fact that Dot was in bankruptcy (it filed its Chapter XI proceedings on December 19, 1975 and was adjudicated a bankrupt on March 13, 1976) tolled the statute until six months after the termination of the bankruptcy proceedings. Since this action was filed within three months after the statute would normally have run and the bankruptcy proceedings ran well beyond the filing date, the government contends that this action was timely filed.

The defendant, on the other hand, urges that, while the statute may have been tolled as to Dot, it was not tolled as to its liability since the government would not have been barred by the automatic stay in the bankruptcy court from proceeding against it. While conceding that its liability under section 3505 is derived from the basic liability of its borrower, Dot, and that, if Dot's liability were discharged defendant would have no liability, it argues that tolling of the statute of limitations as to Dot does not likewise toll the statute as to it.

In support of this contention it cites *McAuley v. United States,* 525 F.2d 1108 (9th Cir. 1975) which concluded that the justification for the section 6503(b) tolling of the statute was that collection efforts are hindered by bankruptcy. There can be no dispute that bankruptcy proceedings hinder collection of claims. It does not necessarily follow, however, that section 6503(b) is limited in application to taxpayers in bankruptcy and is not applicable to those who may have a derivative or secondary liability for the bankrupt's taxes. In fact, until it is determined in the bankruptcy proceedings what tax claims remain unpaid, it would not be to the benefit of persons derivatively or secondarily liable to be required to pay taxes which may be satisfied from the bankrupt's estate. The running of the statute might force such a result.

We conclude that it would be incongruous to interpret the applicable statutes to define different periods of limitations for persons liable for the same tax. The statute of limitations should, if possible, be the same as to all. Accordingly, we hold that section 6503(b) tolled the running of the statute not only as to Dot but as to defendant as well. This action was, therefore, timely filed.

While we have found that the statute of limitations had not run when this action was filed, we are somewhat disturbed that the government waited until 1982 before attempting to assert a section 3505(b) liability against defendant with respect to a 1975 assessment. Both parties were deeply involved in the Dot bankruptcy, the defendant as a secured creditor and the government as a claimant for unpaid taxes. The government was aware some years ago that its withholding tax claim would not be paid in the bankruptcy proceedings. Now, at a time when the defendant may well be seriously prejudiced by the delay, the government files suit to collect a 1975 assessment.

As previously indicated, we conclude that the failure to notify the defendant as required by section 6303(a) of the 1975 assessments against Dot which the government now seeks to collect from defendant pursuant to section 3505(b) is a failure to comply with the procedural prerequisites to this collection suit. We also conclude that, notwithstanding the inexplicable delay in the government's filing this action, it is not barred by the statute of limitations.

Accordingly, an order will be entered granting defendant's motion and dismissing the action with prejudice but without costs.