UNITED STATES of America, Plaintiff-Appellant, Cross-Appellee,

v.

ASSOCIATES COMMERCIAL CORPORATION, Defendant-Appellee, Cross-Appellant.

Nos. 83–1039, 83–1133.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 29, 1985.

Decided Nov. 15, 1983.

Melvin E. Clark, Jr., Tax Div., Dept. of Justice, Washington, D.C., for plaintiff-appellant, cross-appellee.

Eugene I. Meyers, Senior Vice President & Senior Tax Counsel, Steven J. Gombinski, Associate Tax Counsel, Gulf & Western Industries, Inc., New York City, Mark Lieberman, Sr. Atty., Associates Commercial Corp., Chicago, Ill., for defendant-appellee, cross-appellant.

Before CUMMINGS, Chief Judge, BAUER and FLAUM, Circuit Judges.

CUMMINGS, Chief Judge.

The United States sued Associates Commercial Corporation (Associates) for unpaid withholding tax liabilities of Dot Engravers, Inc. (Dot) pursuant to Section 3505(b) [1] of the Internal Revenue Code of 1954. Associates filed a motion to dismiss the government's suit or for summary judgment on two grounds: (1) it had not been given notice of two assessments against Dot

---

1. Section 3505(b) provides as follows:

*Personal Liability Where Funds Are Supplied.*—If a lender, surety, or other person supplies funds to or for the account of an employer for the specific purpose of paying wages of the employees of such employer, with actual notice or knowledge (within the meaning of section 6323(i)(1)) that such employer does not intend to or will not be able to make timely payment or deposit of the amounts of tax required by this subtitle to be deducted and withheld by such employer from such wages, such lender, surety, or other person shall be liable in his own person and estate to the United States in a sum equal to the taxes (together with interest) which are not paid over to the United States by such employer with respect to such wages. However, the liability of such lender, surety, or other person shall be limited to an amount equal to 25 percent of the amount so supplied to or for the account of such employer for such purpose.

Section 3505(c) provides as follows:

*Effect of payment.*—Any amounts paid to the United States pursuant to this section shall be credited against the liability of the employer.

as allegedly required by Section 6303(a)[2] of the Internal Revenue Code and (2) the six-year statute of limitations contained in Section 6503(b)[3] barred Associates' liability as to the first of the two assessments. The district court filed a memorandum opinion and order granting Associates' motion to dismiss because the government had failed to notify Associates of the assessments against Dot which the government is seeking to collect from Associates under Section 3505(b). The district court also held that the statute of limitations was not a bar to the government's suit. *United States v. Associates Commercial Corp.*, 548 F.Supp. 171. The government appealed with respect to the notice point and Associates cross-appealed with respect to the limitations point. We affirm.

### I. *Applicability of Statute of Limitations*

On December 22, 1975, a $69,623.78 assessment was made against Dot with respect to the unpaid taxes withheld from its employees' wages during the third quarter of 1975. This lawsuit was instituted six years and three months after that assessment and would be barred as to that quarter if the six-year statute of limitations in Section 6502(a)(1) applies.[4] On March 15, 1976, $37,457.09 was assessed against Dot with respect to unpaid taxes withheld from its employees' wages during the fourth quarter of 1975. This lawsuit was filed on March 8, 1982, so that it was timely as to the second assessment.

Section 6503(b) explicitly suspends the statute of limitations for the collection from a taxpayer of an assessed tax for the time the taxpayer's assets are in the custody of a court as well as for six months thereafter.[5] See note 3 *supra*. Judge Will decided that the statute of limitations as to Dot was in suspension at the March 8, 1982, filing date of this action because bankruptcy proceedings against Dot ran well beyond that date.[6] He then reasoned that the same period of limitation should apply to all persons liable for the same tax, so that Section 6503(b) tolled the running of the statute as to Associates as well. Therefore the government could collect from Associates its statutory share of the amount covered by the first

**2.** Section 6303(a) provides as follows:

*General Rule.*—Where it is not otherwise provided by this title, the Secretary or his delegate shall, as soon as practicable, and within 60 days, after the making of an assessment of a tax pursuant to section 6203, give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof. Such notice shall be left at the dwelling or usual place of business of such person, or shall be sent by mail to such person's last known address.

**3.** Section 6503(b) provides as follows:

*Assets of Taxpayer in Control or Custody of Court.*—The period of limitations on collection after assessment prescribed in section 6502 shall be suspended for the period the assets of the taxpayer are in the control or custody of the court in any proceeding before any court of the United States or of any State or of the District of Columbia, and for 6 months thereafter.

**4.** Section 6502(a)(1) provides:

*Length of Period.*—Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun—
    (1) within 6 years after the assessment of the tax, * * *.

**5.** The cases are in disarray as to what date triggers the six-month extension of the suspension period. *McCauley v. United States,* 525 F.2d 1108, 1113–1114 (9th Cir.1975), decided that it began at the usual deadline for filing of claims against the bankruptcy estate, six months after the first creditors' meeting. On the other hand, *United States v. Verlinsky,* 459 F.2d 1085, 1088 (5th Cir.1972), started the six-month period when the taxpayer was discharged as a bankrupt instead of the later date of the final closing of the estate which was adopted in *United States v. Malkin,* 317 F.Supp. 612 (E.D.N.Y.1970).

**6.** Judge Will did not decide what event triggers the beginning of the six-month extension of the suspension period, see note 5 *supra,* nor do we. Since this suit was filed six years and three months after the assessment of third quarter liability and since the bankruptcy proceedings commenced during the six years immediately following the assessment, the Section 6503(b) suspension of the statute of limitations as to Dot was in effect at the filing date regardless of what triggering event is chosen.

assessment against Dot. Otherwise, in order to protect the revenue the government would have to seek payment from the lender before its remedies had been exhausted with respect to the taxpayer.

Associates relies on Treasury Regulation § 31.3505–1(d)(1) which provides that the United States may collect the liability from the lender "within 6 years after assessment of the tax against the employer." This tracks the period in Section 6502(a)(1) set forth in note 4 *supra,* but does not refer to the suspension set forth in Section 6503(b) reproduced in note 3 *supra.* Evidently through oversight the regulations under Section 3505 do not refer to the suspension in Section 6503(b), but of course the statutory suspension must prevail over the regulations. And indeed Treasury Regulation § 301.6503(b)–1 does suspend the statute of limitations for collection of the taxpayer's withholding taxes during the time that its assets are under control and custody of the bankruptcy court and six months thereafter.[7]

We decline to adopt the view urged by Associates, which was expressed in *United States v. United California Bank,* No. C–80–3422–WAI (N.D.Cal. March 11, 1983) (Memorandum of Intended Decision). The court there tentatively held that the running of the statute of limitations against a lender for Section 3505(b) liability is not suspended by the pendency of bankruptcy proceedings against the employer because the lender's assets are not subject to court custody. No other court has so held. As will be seen, the relevant statutes convince us that the appropriate focus when considering the scope of the Section 6503(b) suspension provisions is on the underlying interrelationship between an employer's and a lender's liability rather than on the issue of who has custody of the lender's assets.

■ We hold that the same limitation period should apply with respect to Associates' Section 3505(b) liability that applies to Dot's liability. Because Congress decided it was appropriate to impose liability for withholding taxes upon lenders under circumstances in which the lender knew or should have known that the employer could not or did not intend to pay the amount due to the government, Congress established a nexus between the taxpayer's obligation and the lender's liability. Section 3505(c) provides that "Any amounts paid to the United States pursuant to this section [Section 3505] shall be credited against the liability of the employer" and Section 3505(b) imposes personal liability upon the lender "in a sum equal to the taxes (together with interest) which are not paid over to the United States by such employer with respect to such wages" but limited to 25 percent of the amount lent the taxpayer. See note 1, *supra.* Because of the marriage between a lender's liability and a taxpayer's liability, the limitations period with respect to the lender's liability should be coterminous with the limitations period applicable to the taxpayer.

■ Associates appears to take comfort from Section 6503(i) which suspends the statute of limitations "for the period during which the Secretary is prohibited by reason of such [bankruptcy] case from making the assessment or from collecting," but that provision is effective only with respect to bankruptcy proceedings instituted after October 1, 1979. Pub.L. 96–589, § 7(e), 94 Stat. 3389, 3412 (1980). Here the bankrupt-

---

7.  Treas.Reg. § 301.6503(b)–1 provides:
    *Suspension of Running of Period of Limitation; Assets of Taxpayer in Control or Custody of Court*
    Where all or substantially all of the assets of a taxpayer are in the control or custody of the court in any proceeding before any court of the United States, or of any State of the United States, or of the District of Columbia, the period of limitations on collection after assessment prescribed in section 6502 is sus-

    pended with respect to the outstanding amount due on the assessment for the period such assets are in the control or custody of the court, and for 6 months thereafter. In the case of an estate of a decedent or an incompetent, the period of limitations on collection is suspended only for periods beginning after November 2, 1966, during which assets are in the control or custody of a court, and for 6 months thereafter.

cy proceedings were instituted on December 19, 1975.

Since Associates' liability under Section 3505(b) was derived from the basic liability of Dot so that if Dot's liability were satisfied defendant would have no liability, the tolling of the statute of limitations as to Dot should toll the statute as to Associates. The running of the statute might force Associates to be required to pay taxes when they might otherwise be satisfied from the bankrupt's estate. While we do not condone the delay in the government's attempt to impose liability against defendant (unless the Government was waiting to see if it could recover from Dot, and there is no such showing), the statute of limitations should be the same as to all rather than being interpreted to define different periods of limitation for persons liable for the same tax.

## II. *Requirement of Notice*

Associates contends that the government may not maintain this civil action under Section 3505(b) because it failed to provide Associates, a person [8] allegedly liable for the unpaid tax, with notice of the assessments of Dot's unpaid withholding tax as required by Section 6303(a). The government argues that Section 6303(a) does not require such notice to a lender [9] subject to Section 3505(b) liability. Alternatively, the government argues that even if Section 6303(a) requires notice, failure to provide it bars only liens and levies and not civil proceedings like the one before us. We hold that Section 6303(a) mandates notice to a lender subject to Section 3505(b) liability and that this civil proceeding is barred because of the absence of such statutorily required notice.

### A. *Section 6303(a) Required Notice to Associates*

■ Section 6303(a) requires that notice of an assessment of unpaid taxes must be provided to "each person liable for the unpaid tax" within sixty days after the assessment was made, unless otherwise provided by the Internal Revenue Code (note 2 *supra* ). Section 3505(b) itself does not exempt from Section 6303(a) notice lenders subject to liability (note 1 *supra* ) and we have not found any other tax provision which creates such an exemption. Thus since Associates is a "person liable for the unpaid tax" for the purposes of Section 6303(a), it is entitled to notice of the assessment of the unpaid tax mandated by that statute.

The government argues that Associates is not such a person because its alleged liability under Section 3505(b) is a personal liability and not a tax liability (Br. 20). Presumably the government bases its position on the fact that Section 3505(b) makes a lender "liable in his own person and estate." However, the government fails to recognize that this liability is for an employer-borrower's unpaid taxes, plus interest, to a maximum sum of twenty-five per cent of the amount which the lender supplied to the employer. See Section 3505(b) (note 1 *supra* ) and, *e.g., United States v. Hannon Co.,* 639 F.2d 284, 285 (5th Cir.1981). Therefore, the liability which is imposed on the lender personally is a tax liability. Furthermore, the fact that the amount which the lender is required to pay is to be "credited against the liability of the employer" (Section 3505(c), note 1 *supra* ) makes it clear that the lender's derivative liability under Section 3505(b) is a tax liability.

The government next argues that requiring Section 6303(a) notice for lenders subject to Section 3505(b) liability will impose such a prohibitive investigatory and economic burden on the government as to make Section 3505(b) a dead letter, thereby thwarting Congress' intent to provide an

---

**8.** As used in the Sections of the Internal Revenue Code relevant to our inquiry, the term "person" includes a corporation. 26 U.S.C. § 7701(a)(1).

**9.** Our use of the word "lender" throughout this opinion is not intended to limit the applicability of this decision only to lenders. Rather, we use that term in this opinion as a convenient way to refer to all persons subject to liability under Section 3505(b).

additional source for recovery of unpaid withholding taxes. Such an argument is highly speculative and unsupported by any convincing statistics. There is no claim that the statutory notice could not have been given to Associates. Moreover, it is apparent that Section 6303(a)'s notice requirement is only one of many limitations which Congress placed on the scope of Section 3505(b). This provision imposes tax liability only on lenders who supply funds specifically to pay wages with actual notice or knowledge (including knowledge obtainable through due diligence under Section 6323(i)(1)) that the employer-borrower will not or cannot pay the withholding taxes, even though presumably Congress could have imposed liability in much broader circumstances. Cf. *Sherwood v. United States,* 246 F.Supp. 502, 508 (E.D.N.Y.1965). Even lenders who fall within Section 3505(b)'s narrow parameters incur liability only to a maximum of twenty-five per cent of the amount supplied to the employer. These limitations on the scope of Section 3505(b) evidence a Congressional intent to seek withholding taxes from lenders only in fairly egregious circumstances. But as Judge Will pointed out, failure to apply Section 6303(a)'s notice provisions would increase the likelihood of imposing derivative tax liability on lenders that Section 3505(b) was designed to protect and whose ability to defend against liability would of course be diminished absent prompt notice of the government's potential claim. *United States v. Associates Commercial Corporation,* 548 F.Supp. 171, 174 (N.D.Ill.1982). Thus instead of defeating Congress' intent, as the government argues, applying Section 6303(a)'s notice provisions to lenders allegedly subject to Section 3505(b) liability gives effect to that intent.[10]

Finally, the government, relying on recent decisions, argues that because no separate assessment need be made against a lender pursuant to Section 35C5(b), no separate notice of the assessment of the employer's unpaid withholding taxes need be provided to the lender pursuant to Section 6303(a). But the government's reliance on *United States v. Marine Midland Bank,* 544 F.Supp. 268 (W.D.N.Y.1982), and on *United States v. First National Bank of Carbondale,* 499 F.Supp. 51 (M.D.Pa.1980), is misplaced. In both cases the district courts based their opinions on the absence of a notice requirement in the Treasury Regulations promulgated under Section 3505 rather than looking to Section 6303(a) itself. 544 F.Supp. at 271; 499 F.Supp. at 53. Furthermore, the silence of Section 3505(b) and the regulations thereunder does not create an inference as to whether Section 6303(a) requires notice since, as Judge Will noted, Section 3505(b) itself merely identifies the circumstances under which a lender's liability arises. The procedures for enforcing Section 3505(b) and other tax provisions are contained in Subtitle F of the Internal Revenue Code, of which Section 6303(a) is one provision. 548 F.Supp. at 175, n. 1. On the other hand, Section 3505(b) is part of Subtitle C dealing with employment taxes.

The better view regarding the application of Section 6303(a)'s notice requirement to lenders subject to Section 3505(b) liability is expressed in *United States v. Dixieline Financial, Inc.,* 594 F.2d 1311 (9th Cir.1979). In that case the court of appeals rejected a lender's argument that Section 3505(b) liability could not be imposed solely on the basis of an assessment of the employer-borrower's unpaid withholding tax; the lender had insisted that it was necessary to make a separate assessment against the lender as well. In rejecting this argument, the Ninth Circuit noted that lack of separate assessment did not mean a lender

would not have due notice of the fact that the government is looking to it for

---

**10.** The government correctly argues that there is no general requirement that a potential defendant receive notice that a suit may be instituted against it. However, the care with which Congress developed the very narrow remedy provided in Section 3505(b) and the absence of any language in that statute to override Section 6303(a)'s notice requirement convince us that there is a particular requirement of notice of assessment here, thus alerting a lender to a possible civil action.

payment. \* \* \* 26 U.S.C. § 6303 requires that notice of the assessment be given within 60 days "to each person liable for the unpaid tax." If Dixieline was not given notice of the assessment against the employer of the tax for which it is being held liable, then the case may present a question as to the consequences that flow from that fact. However, dismissal by the district court was not based on failure to give notice but on failure to assess against Dixieline a tax already assessed against the employer.

594 F.2d at 1313 (footnote omitted). Thus the Ninth Circuit turned to Section 6303(a) itself rather than to extraneous regulations to evaluate the notice requirement. Its consideration of that provision led it to the view that we also hold: Section 6303(a) mandates notice to a lender subject to Section 3505(b) liability. For us, as for the *Dixieline* court, the only remaining question concerns the consequences that flow from failure to provide the mandated notice.

B. *Failure to Provide Notice Precludes this Suit*

■ The government contends that the notice mandated by Section 6303(a) is a prerequisite only to collection activities for which separate statutes independently require notice or demand for payment. See 26 U.S.C. § 6321 (authorizing liens); § 6331(a) (authorizing levy and distraint); § 6601(e)(3) (authorizing collection of interest on certain penalties). This argument is unpersuasive. Section 6303(a) itself does not indicate that the right to notice is dependent on which tax collection option the government uses. 548 F.Supp. at 175. Section 6303(a) requires notice of the assessment of unpaid taxes in order to protect the person liable for paying the taxes, see *Macatee Inc. v. United States*, 214 F.2d 717, 719 (5th Cir.1954), and this rationale applies regardless of which collection mechanism is used. 548 F.Supp. at 175.

In support of its contention, the government cites *Jenkins v. Smith*, 99 F.2d 827 (2d Cir.1938). In *Jenkins*, the court interpreted 26 U.S.C. § 1545, a predecessor statute to Section 6303. The Second Circuit decided that failure of the tax Collector to give notice of an assessment made by the Commissioner barred the Collector's right to collect taxes by levy and distraint but not the right of the United States to institute a civil collection proceeding. See also *United States v. Erie Forge Co.*, 191 F.2d 627 (3d Cir.1951), certiorari denied, 343 U.S. 930, 72 S.Ct. 759, 96 L.Ed. 1339; *Sherwood v. United States*, 246 F.Supp. 502 (E.D.N.Y.1965).

*Jenkins* and its progeny do not support the government's position. Section 1545 was part of a statutory scheme quite different from that of which Section 6303 is now a part. Under the earlier scheme, the tax Collector had no authority to collect taxes by means of a civil proceeding, see *Jenkins*, 99 F.2d at 828, whereas under the Internal Revenue Code of which Section 6303 is a part, the Secretary of the Treasury or his delegate may collect the unpaid tax by levy (§ 6331) or by civil proceeding (§ 7401). In fact, to the extent that *Jenkins* is at all relevant, it is more compatible with our view that Section 6303(a) notice is a prerequisite to any collection activities, at least after an assessment has been made, than with the view of the government. The court in *Jenkins* premised its doctrine that a civil proceeding by the United States was not barred by lack of notice by the Collector on the fact that Section 1545 limited "only the ·collector's power to 'collect' and he can 'collect' a tax only by [levy and] distress" only after serving notice upon the taxpayer. 99 F.2d at 828 (emphasis added). By necessary implication, then, where, as here, the same official (the Secretary of the Treasury or his delegate) has power both to collect by levy and to authorize civil collection proceedings, *Jenkins* supports the conclusion that failure to provide statutorily required notice bars both recovery methods. See *United States v. Ball*, 326 F.2d 898, 901 (4th Cir.1964), where a summary judgment for the government was reversed for failure to provide notice of deficiency under Section 6212 and notice of assessment and demand under Section 6303(a).

Judgment affirmed.