**UNITED STATES of America, Plaintiff,**

v.

**JERSEY SHORE STATE BANK, Defendant.**

Civ. No. 83–1879.

United States District Court,
M.D. Pennsylvania.

March 20, 1985.

James W. Walker, U.S. Attys. Office, Scranton, Pa., and Mark G. Gellar, Tax Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Martin A. Flayhart, Jersey Shore, Pa., for defendant.

## ORDER

MUIR, District Judge.

### THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

The United States of America filed this lawsuit against the Defendant, Jersey Shore State Bank (Bank), seeking payment of Federal Insurance Contribution Act (FICA) taxes which were withheld from the wages of employees of Pennmount, Industries, Inc. (Pennmount) pursuant to 26 U.S.C. § 3505(a) and (b) of the Internal Revenue Code of 1954. Presently pending before this Court are the parties' cross-motions for summary judgment. These motions are now ripe for this Court's consideration.

The undisputed facts in this case are as follows. The Bank is an authorized Pennsylvania banking institution with its main office at 115 South Main Street, Jersey Shore, Pennsylvania. Pennmount Industries, Inc. was a corporation located in Lock Haven, Pennsylvania engaged in the manufacture of wooden tables and chairs. In February of 1976, Pennmount opened a checking account at the Bank and the Bank made Pennmount a working capital loan of $20,000. Between February of 1976 and July of 1977, the Bank provided Pennmount with additional loans which totalled $270,000, secured by mortgages on Pennmount property and by specific receivables of Pennmount. Beginning with the fourth quarter of 1977, and continuing through the first quarter of 1980, Pennmount failed to pay over to the United States of America federal income taxes and FICA taxes which it withheld from the wages of its employees. The parties do not dispute the validity of these taxes.

In June of 1977, Pennmount set up a separate checking account at the Bank, No. 154–261, which was only to be used for the deposit of withholding and FICA taxes. In July of 1977, Pennmount paid to the United States by certified check on the Bank part of the proceeds of a loan from the Bank in satisfaction of Pennmount's delinquent withholding and FICA taxes. Because the company was experiencing financial troubles, Pennmount began paying its employees in cash rather than by check during the latter part of 1977 until October 28, 1977. On that date, Penmount began paying its employees by means of money orders issued by the Bank. From October 28, 1977 through January of 1979, Pennmount procured from the Bank a money order for each Pennmount employee in the amount of that employee's net wages. Pennmount paid for the money orders by a check to the Bank for the total amount of the net payroll. These payroll payments by money order were made from a third bank account, No. 166–308, opened on October 26, 1978. In January of 1978, the tax account, No. 154–261, which Pennmount had established for the purpose of depositing withheld FICA taxes became overdrawn and remained overdrawn through September of 1979. Although checks were drawn payable to the Internal Revenue Service on that special account, the Bank did not pay those checks because the account lacked sufficient funds. In January of 1979, Pennmount ceased its manufacturing oper-

ations, and in order to preserve its security, the Bank began directly paying the wages of those Pennmount employees whose services were necessary to conserve the assets of the company. The Bank did not at that time pay to the United States any withholding or FICA taxes for which Pennmount had been delinquent since the first calendar quarter of 1979.

While the Bank concedes that it is liable for Pennmount's withholding and FICA taxes beginning in 1979, the parties dispute whether the Bank's involvement in the payment of wages to Pennmount's employees from October 28, 1977 to December 31, 1979 renders it liable under either 26 U.S.C. § 3505(a) or (b) for the withholding and FICA taxes Pennmount was required to pay to the United States. Section 3505(a) makes a third party personally liable in an amount equal to unpaid withholding and FICA taxes where that third party pays wages directly, or through an agent, to a taxpayer's employees. 26 U.S.C. § 3505(a) provides as follows:

> Direct payment by third parties.—For purposes of sections 3102, 3202, 3402, and 3403, if a lender, surety, or other person, who is not an employer under such sections with respect to an employee or group of employees, pays wages directly to such an employee or group of employees, employed by one or more employers, or to an agent on behalf of such employee or employees, such lender, surety, or other person shall be liable in his own person and estate to the United States in a sum equal to the taxes (together with interest) required to be deducted and withheld from such wages by such employer.

The companion provision to Section 3505(a) is Section 3505(b) which imposes personal liability on third parties who supply funds to an employer for the purpose of paying wages knowing that the employer does not intend to or will be unable to pay withholding taxes to the Government. 26 U.S.C. § 3505(b) provides:

> Personal liability where funds are supplied.—If a lender, surety, or other person supplies funds to or for the account of an employer for the specific purpose of paying wages of the employees of such employer, with actual notice or knowledge (within the meaning of section 6323(i)(1)) that such employer does not intend to or will not be able to make timely payment or deposit of the amounts of tax required by this subtitle to be deducted and withheld by such employer from such wages, such lender, surety, or other person shall be liable in his own person and estate to the United States in a sum equal to the taxes (together with interest) which are not paid over to the United States by such employer with respect to such wages. However, the liability of such lender, surety, or other person shall be limited to an amount equal to 25 percent of the amount so supplied to or for the account of such employer for such purpose.

On October 30, 1984, the United States moved for summary judgment on Count 1 of the complaint which states a claim against the Bank under 26 U.S.C. § 3505(a) which in brief relates to wages paid directly to employees by a third person. The United States argues that the undisputed facts show that by issuing money orders in the net amount of Pennmount employee's wages from October 1, 1977 through December 31, 1978, the Bank directly paid the wages of Pennmount employees so as to be liable for Pennmount's withholding and FICA taxes for that period under 26 U.S.C. § 3505(a) in the amount of $15,011.57 plus interest. The Bank filed a brief in opposition to which the United States filed a reply. On October 31, 1984, the Bank filed its cross-motion for summary judgment in which it requested that it be granted summary judgment on both counts of the complaint because the undisputed facts show that the United States never gave the Bank or Pennmount Industries notice of the filing of an assessment against either the Bank or Pennmount Industries and that that failure was in contravention of the statutory notice requirement set forth in 26 U.S.C. § 6303(a). Failure to comply with the notice provisions of 26 U.S.C. § 6303(a),

the Bank argues, precludes the United States from maintaining this action against the Bank. We will first address the Defendants' cross-motion for summary judgment because, if it is granted, it will dispose of this lawsuit.

FICA and employment withholding taxes fall within Subtitle C of the Internal Revenue Code governing employment taxes. Congress added to Subtitle C what are now §§ 3505(a) and 3505(b) in order to provide the IRS a remedy against third persons, such as creditors and banks who directly or indirectly pay the net wages of a taxpayers' employees. Subtitle C does not set out a special procedure which the IRS must follow in order to affix tax liability pursuant to §§ 3505(a) and 3505(b) but instead relies on Subtitle F of the Internal Revenue Code which generally governs procedure and administration of tax-related prosecutions. Within Chapter 64 of Subtitle F, 26 U.S.C. § 6303 sets forth the procedure by which notice and demand for a tax shall be made. That section provides as follows:

(a) General Rule.—Where it is not otherwise provided by this title, the Secretary or his delegate shall, as soon as practicable, and within 60 days, after the making of an assessment of a tax pursuant to section 6203, give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof. Such notice shall be left at the dwelling or usual place of business of such person, or shall be sent by mail to such person's last known address.

Jersey Shore argues that because more than five (5) years elapsed between the initial date of notice of the filing of the tax lien assessment against Pennmount and the institution of the present action against the Bank, section 6303(a) has been violated. When Pennmount failed to pay employee withholding and FICA taxes from the beginning of 1977 through the first quarter of 1980, the Government made tax lien assessments against Pennmount. The Government gave Pennmount notice of the filing of its first tax lien against Pennmount on June 22, 1978. The Government

admits that it did not provide the Bank with any notice of filing of this tax lien or any other subsequent tax lien assessments against Pennmount until the Government filed this lawsuit against the Bank on December 30, 1983. What this Court must determine is whether the Government's failure to give the Bank prior notice of its potential liability for the assessment made against Pennmount violates § 6303(a) and, if so, what are the consequences of that violation.

■ Relying on the recent case of *United States v. Associates Commercial Corporation*, 721 F.2d 1094 (7th Cir.1983), the Bank argues that a lender cannot be held liable under 26 U.S.C. § 3505(b) where the Government fails to provide the lender with notice of a filing of a tax lien assessment against the company to which the lender has made loans or extended credit. The *Associates Commercial* Court held that § 6303(a) mandates notice to a lender subject to § 3505(b) liability, and that failure to provide notice pursuant to § 6303(a) bars a subsequently filed civil action. *Id.* at 1098. The Court pointed out that because no specific enforcement procedure applied to proceedings under § 3505(b), those sections of the Internal Revenue Code which created liability such as § 3505(b) had to be read and interpreted in conjunction with those Code Sections setting forth the procedure for enforcement of such liabilities, including the notice requirement of § 6303(a). We agree with the conclusion of the Seventh Circuit Court of Appeals that § 6303(a) is the general notice provision for all liability created under the Internal Revenue Code, including § 3505(b).

■ The United States of America, in its memorandum in opposition to Jersey Shore's motion for summary judgment, argues that the notice provision of § 6303(a) is only a part of the administrative collection process and not a prerequisite to the collection of taxes by means of civil lawsuit. However, the United States acknowledges that an assessment is "simply a bookkeeping notation...made when the Secretary [of the Treasury] or his delegate establishes an account against the taxpayer

on the tax rolls." *Laing v. United States,* 423 U.S. 161, 170 n. 13, 96 S.Ct. 473, 479 n. 13, 46 L.Ed.2d 416 (1976). *See* 26 U.S.C. § 6203. Once an assessment is made, an automatic lien arises against the taxpayers' property by statute. 26 U.S.C. §§ 6321 and 6322. Once an assessment has been made, the IRS has the power to collect that tax using certain summary methods of collection which do not necessitate court action. *See, United States v. Rodges,* 461 U.S. 677, 682–83, 103 S.Ct. 2132, 2137, 76 L.Ed.2d 236 (1983). But before the IRS can levy on property on which an assessment has been made, the United States admits that the taxpayer must first be notified. *See* Memorandum in Opposition to Defendants' Motion for Summary Judgment, page 12. 26 U.S.C. § 6331(a) and (b). Furthermore, it is undisputed that the function of the notice and demand requirement in § 6303(a) is to protect the taxpayer. *Macatee, Inc. v. United States,* 214 F.2d 717, 719 (5th Cir. 1954). Yet, the United States argues that § 6303(a) requires notice only to those parties whose names appear on the assessment list. Such an interpretation runs afoul of the plain language of the statute which specifically requires that notice be given *each person liable for the unpaid tax,* stating the amount due and demanding payment thereof. While the United States properly contends that § 6303(a) does not mandate perfect technical compliance so that belated or constructive notice of the assessment may suffice to render a third party liable, in the case before us absolutely no notice of the assessment was received by the Bank for almost six years until this civil suit was filed in 1983. No claim for constructive notice is made.

The Government also argues that failure to provide notice to the Bank under 26 U.S.C. § 6303(a) does not preclude this litigation because it is simply not practical to require the IRS to notify the person potentially liable for a tax within 60 days of assessment. Reading such a requirement into section 6303(a), the Government argues, will impose an impossible requirement on the IRS which will impose a great economic and investigatory burden, requiring the IRS to identify potentially liable third parties. The IRS takes the position that requiring the IRS to notify potentially liable third parties will undermine the purpose of § 3505(b) under which Congress intended to create an additional source for the recovery of unpaid withholding taxes. But as pointed out by the Bank, 26 U.S.C. § 6501(a) provides that the Government has three years from the time that a tax return is filed to impose an assessment. Therefore, the Government has three years to identify lenders who are potentially liable for an employer's withholding and FICA taxes and to file an appropriate assessment before the 60 day notice period begins to run. Hence, we are not persuaded that requiring the IRS to comply with 26 U.S.C. § 6303(a) will unduly impede its ability to collect withholding and FICA taxes as Congress intended under § 3505(b). We also note that the notice provision of § 6303(a) is only one of the many limitations which Congress has placed on § 3505(b). Because section 3505(b) in effect imposes derivative liability on a lender for an employer's withholding and FICA taxes, it is all the more necessary to insure that lenders receive adequate, prompt notice of a potential claim against them by the Government. *United States v. Associates Commercial Corp.,* 721 F.2d 1094, 1099 (7th Cir.1983). We therefore conclude that instead of defeating Congress's intent, as the Government argues, applying the notice provisions of § 6303(a) to lenders subject to section 3505(b) liability gives effect to that intent. If Congress had intended that the notice provisions of 26 U.S.C. § 6303(a) not apply to persons whom the Government seeks to hold liable under 26 U.S.C. § 3505(b) then Congress would have created such an exception in the statute.

Lastly, the Government argues that even if section 6303(a) required the United States to give notice to the Bank of the assessment made against Pennmount, failure to give such notice does not impair the United States's right to sue the Bank under § 3505(b) for Pennmount's employee withholding and FICA taxes. But as noted by the Seventh Circuit Court of Appeals in *Associates Commercial,* section 6303(a) it-

self does not indicate that the right to notice is dependent on which tax collection option the Government uses. 721 F.2d 1094, 1100. Section 6303(a) requires notice of the assessment of unpaid taxes in order to protect the person liable for paying taxes from surprise without regard to the collection mechanism that the government employs. *Id.* Nor are we persuaded by the Government's argument that it has an independent common law right to collect a debt for tax liability independent of the assessment process for which no notice pursuant to § 6303(a) is required.

For the foregoing reasons, we will grant the motion of the Defendant Jersey Shore State Bank for summary judgment.

NOW, THEREFORE, IT IS ORDERED THAT:

1. The motion of the United States for summary judgment is hereby denied.

2. The motion of the Defendant Jersey Shore State Bank for summary judgment is hereby granted.

3. The Clerk of this Court shall enter judgment in favor of the Defendant Jersey Shore State Bank.

4. The Clerk of this Court shall close this file.