**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**Lawrence W. BERMAN, Mariln Berman,**
**and Forex Corporation,**
**Defendants-Appellees.**

**No. 86–3630.**

United States Court of Appeals,
Sixth Circuit.

Argued May 7, 1987.

Decided Aug. 6, 1987.

Laurie A. Snyder, argued, Washington, D.C., Albert Ritcher, Asst. U.S. Atty., Columbus, Ohio, Robin L. Greenhouse, Michael L. Paup, Lead Counsel, Roger M. Olsen, Tax Div., Dept. of Justice, and Wynette J. Hewett, Washington, D.C., for plaintiff-appellant.

this case of whether the standard of review should be stricter than the rational basis test.

David Carruthers, Roland T. Gilbert, Kincaid, Palmer & Randall, Columbus, Ohio, for BancOhio.

Max I. Ziskind, Columbus, Ohio, for Roy & Co., Inc.

William H. Bluth, argued, Columbus, Ohio, for L. Berman, M. Berman and Forex Corp.

William Goldman, Columbus, Ohio, for Tallie Corp.

Patrick Smith, Columbus, Ohio, for Diamond Harmony.

Phillip Walther, Asst. Pros. Atty., Columbus, Ohio, for Treasurer of Franklin County.

Steve T. Greene, Newark, Ohio, and A.C. Strip, Columbus, Ohio, for Martin's Foods.

Richard Wuerth, Lane, Alton & Horst, Columbus, Ohio, for Central Trust Co.

Before GUY and BOGGS, Circuit Judges, and EDWARDS, Senior Circuit Judge.

RALPH B. GUY, Jr., Circuit Judge.

The United States appeals the trial court's ruling that the government may not maintain a civil action to reduce an assessment to judgment in the absence of sending notice of the assessment and demand for payment to the taxpayer in accordance with section 6303(a) of the Internal Revenue Code, 26 U.S.C. § 6303(a). Because we are convinced that the trial court erred as a matter of law, we reverse.

This action was brought by the United States of America against Lawrence W. Berman and Marilyn L. Berman to reduce two tax assessments to judgment and to foreclose on the tax liens that would arise from properly noticed assessments. The facts, as found by the trial court after a bench trial, are not challenged.

By warranty deeds dated June 3, 1961, and August 22, 1967, defendant Lawrence W. Berman acquired certain real property that is the subject of this suit, described as the "Alum Creek property." In addition, the Bermans owned a residence at 1362 Haddon Road in Columbus, Ohio.

On September 30, 1975, the Internal Revenue Service (IRS) received the defendants' joint individual income tax return (Form 1040) for the year ending December 31, 1972. The defendants' tax return indicated a tax liability of $67,368.00 for 1972; however, no payment was submitted with the return. At the trial, the government introduced the ACTRA computer transcript of the Bermans' account to show that on November 3, 1975, the defendants were jointly and severally assessed $101,323.97 for unpaid taxes, interest, and penalties for the 1972 tax year.

By a quitclaim deed dated January 21, 1976, and recorded February 10, 1976, Mr. Berman transferred the Alum Creek property and the residence at 1362 Haddon Road to Forex Corporation. The shares of Forex were wholly owned by Mr. Berman at the time of the transfer. Mr. Berman subsequently transferred all of the shares of Forex to his sister.

On April 5, 1976, the government filed a notice of federal tax lien against any and all property of the defendants with the Franklin County Recorder. The notice of lien states that the lien arises from an assessment made on November 3, 1975, for an unpaid balance of $101,323.97 from the tax year 1972.

At some time between the November 3, 1975 assessment and July 11, 1978, the Bermans' 1972 tax return was audited. As a result of that audit, the computer transcript of the Bermans' account states that on July 11, 1978, the defendants were assessed delinquent taxes, penalties, and interest for the 1972 tax year in the amount of $44,749.45.

On December 21, 1977, the government filed another notice of federal tax lien with the Franklin County Recorder. This lien was on all property of "Forex Corporation, Nominee of Lawrence M. and Marilyn L. Berman." The notice of lien specified that the lien was on the Alum Creek property and on the Bermans' residence at 1362 Haddon Road. The lien arose from the

November 3, 1975, assessment for the tax year 1972 and was for $99,267.13.[1]

On August 4, 1978, the government filed two notices of federal tax lien with the Franklin County Recorder—one on the property of Lawrence W. and Marilyn L. Berman and a second on the property of "Forex Corporation, Nominee of Lawrence W. and Marilyn L. Berman." The lien against the defendants individually did not specify any particular property, although the lien against Forex and the Bermans jointly specified that it was a lien on the Alum Creek property and the residence at 1362 Haddon Road. The liens arose from the July 11, 1978 assessment for the tax year 1972, and were each in the amount of $44,749.45.[2] On October 29, 1981, the government filed the instant action seeking to reduce the assessments on the Alum Creek property to judgment and to foreclose on the liens filed against that property on April 5, 1976, December 21, 1977, and August 4, 1978.

The trial court noted that the government's objectives of reducing certain tax assessments to judgment and foreclosing upon the federal tax lien on the Alum Creek property required it to prove that certain statutory procedures were followed. These statutory procedures include the making of an assessment against the taxpayer, 26 U.S.C. § 6203, and mailing a notice of assessment and demand for payment to the taxpayer, 26 U.S.C. § 6303(a). In order to prove that the statutory prerequisites were fulfilled, the government presented the testimony of Annie P. Hicks, an employee of the criminal investigation division of the IRS. In addition, the government offered a portion of a computer transcript of the defendants' IRS account, which was interpreted for the court by Ms. Hicks. The computer transcript, generated from something called an "ACTRA" account, was offered to prove that an assessment was made against the defendants and that notice of assessment and demand for payment were sent to the defendants, thus creating a federal income tax lien under 26 U.S.C. § 6321.

Title 26 U.S.C. § 6203 provides the method to be used when the IRS makes an assessment against a taxpayer:

> The assessment shall be made by recording the liability of the taxpayer in the office of the Secretary in accordance with the rules or regulations prescribed by the Secretary. Upon request of the taxpayer, the Secretary shall furnish the taxpayer a copy of the record of assessment.

In the present case, the government offered the ACTRA computer transcript as proof that the IRS assessed the unpaid balance of the taxes due for 1972 against the Bermans. Ms. Hicks described how section 6203 assessments are made by the IRS: "The assessment is made from information that is key punched from the return, according to what the taxpayer has entered on the return, as far as his income and deductions and exemptions, all of this is key punched and goes to the tape." Ms. Hicks' testimony established that a section 6203 assessment is an internal, mechanical, bookkeeping task performed by the computer based on return information. Ms. Hicks also identified the entries on the

1. The discrepancy between the amount of $101,-323.97 originally assessed and the amount on the notice of lien is explained by three credits to the Bermans' account totalling $2,057.84, and an additional $1.00 charge assessed on April 26, 1976.

2. On April 11, 1980, Railroad Savings & Loan filed an action to foreclose on a mortgage on 1362 Haddon Road, Columbus, Ohio, in the Franklin County Court of Common Pleas. The Bermans and the United States were named as defendants in that action. On October 7, 1981, the state court entered an amended judgment entry which held, in pertinent part: "The Court finds ... that the claims of the Defendant, the United States of America, set forth in the pleadings filed in this action, for liens against the real property which is the subject of this action are invalid and do not constitute liens against the said real property." On October 5, 1982, the government filed a motion to set aside the judgment of the state court. This motion was denied.

At trial, defendants asserted that this finding was *res judicata* and that the government was barred from relitigating the validity of the tax liens. The trial court did not directly address this issue, and in view of the fact that the government now concedes that the liens were invalid, this issue is no longer of significance.

Bermans' computer printout which reflected that the assessments had been made on November 3, 1975, for unpaid taxes, and on July 11, 1978, for additional taxes, penalties, and interest for 1972.

The trial court concluded that the assessments had been made.[3] Section 6203 only requires that a notation or entry be made in the internal records of the IRS when an assessment is made against a taxpayer, and the ACTRA transcript itself reflected such notations. The court then turned to whether the government had proved that notice of assessment and demand for payment had been made.

Section 6303(a) provides:

Where it is not otherwise provided by this title, the Secretary or his delegate shall, as soon as practicable, and within 60 days, after the making of an assessment of a tax pursuant to section 6203, give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof. Such notice shall be left at the dwelling or usual place of business of such person, or shall be sent by mail to such person's last known address.

Section 6321, which creates a lien on the property of a taxpayer who fails to pay taxes, states:

If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto)

shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

The trial court noted that the purpose of requiring notice of assessment and demand for payment is to protect the individual liable for paying the taxes due. Moreover, the court held that "[n]otice and demand are statutory prerequisites to the institution of an action to collect taxes or to enforce a federal income tax lien," citing *Meridian Wood Products Co., Inc. v. United States*, 725 F.2d 1183, 1186 (9th Cir.1984).

The court was not persuaded by the testimony of Ms. Hicks or the computer transcript that notice of assessment and demand for payment had been made. The major difficulty the trial court had with accepting the ACTRA transcript as proof by a preponderance of the evidence that notice was sent was Ms. Hicks' testimony that the transcript was partially inaccurate. The ACTRA transcript contained four statements concerning notices sent to the Bermans informing them of the November 3, 1975, assessment. The transcript stated, according to the testimony of Ms. Hicks, that a second notice was sent on December 8, 1975. It also indicated that another second notice was sent on December 19, 1975, and that yet another second notice was sent on January 26, 1976. Ms. Hicks testified that despite the unequivocal statement of the ACTRA computer transcript that notices were sent on December 29, 1975, and January 26, 1976, she was certain that

---

**3.** In their brief, defendants argue that the trial court did not find that proper assessments had been made. According to defendants, Treasury Regulation § 301.6203–1 requires the signature of an assessing officer. While acknowledging that the district court, in the instant case, did not consider this regulation, defendants argue that the ACTRA transcript would not satisfy this requirement. According to defendants, the date of assessment is of vital importance because it affects the statute of limitations. A tax must be assessed within three years after the return is filed. 26 U.S.C. § 6501(a). If the tax has been timely assessed, then the government has an additional six years to commence suit. Defendants submit that because the government failed to make proper assessments, their suit is barred by the statute of limitations.

Our understanding of the trial court's opinion is that the court did find that proper assessments were made. This understanding is based not only upon a reading of the opinion, but, under the trial court's reasoning, if proper assessments had not been made there would have been no reason for the court to go on to rule that notice of assessment and demand for payment had not been made. Moreover, we are not at liberty to consider defendants' arguments regarding the Treasury Regulation because this issue is not properly before us. Defendants did not perfect an appeal from the trial court's judgment. Finally, we also decline to address defendants' arguments concerning the statute of limitations, as it appears that this argument is being raised for the first time on appeal.

those notices were not sent. Ms. Hicks testified that she could neither explain why these notations appeared on the printout, nor how they got on the printout, but she speculated it was the result of some year-end computer functions. Based primarily on these discrepancies, the court determined that the government had failed to prove by a preponderance of the evidence that any notice of assessment or demand for payment was sent to defendants.

The trial court determined that because the government failed to carry its burden of proof, the federal tax liens could not be foreclosed. In addition, the court held that since notice and demand are prerequisites to *any action* to collect taxes, the government was not entitled to reduce the assessments to judgment. *United States v. Associates Commercial Corp.*, 721 F.2d 1094, 1100 (7th Cir.1983).

On appeal, the government does not challenge the district court's finding that notice and demand for payment of the assessments were not mailed to taxpayers and the court's consequent refusal to enforce the federal tax liens against taxpayers' property. Rather, the government challenges the district court's legal conclusion that the mailing of notice of assessment and demand for payment to taxpayers are conditions precedent to the government's right to maintain a civil suit to collect the tax liabilities.

The government asserts that notice and demand for payment of an assessment is a prerequisite only to administrative collection procedures, i.e., levy and distraint upon the taxpayer's property, which are summarily executed. With respect to a suit to collect taxes in a district court, on the other hand, the government argues that notice of assessment and demand for payment serve no purpose, as the complaint gives the taxpayer ample opportunity to voluntarily pay his tax liability prior to the enforcement of the judgment. The government contends that it has a common law right to maintain an action for the collection of the taxes in addition to its statutory remedies.

Defendants, like the trial court, rely on *United States v. Associates Commercial Corp.*, 721 F.2d at 1094. There the Seventh Circuit had occasion to interpret the notice provision of section 6303(a), although in a different context. The government sued Associates for unpaid withholding tax liabilities of Dot Engravers, Inc., pursuant to section 3505(b) of the Internal Revenue Code. This section imposes liability for withholding taxes on lenders, sureties, and other third parties who essentially control the payroll function of another entity.[4] Associates contended that the government could not maintain the civil action under section 3505(b) because it failed to provide Associates, a person allegedly "liable for the unpaid tax," with notice of the assessments of Dot's unpaid withholding tax as required by section 6303(a). The government argued that section 6303(a) did not

---

**4.** Section 3505(b) provides in pertinent part:
If a lender, surety, or other person supplies funds to ... an employer for the specific purpose of paying wages of the employees of such employer, with actual notice or knowledge ... that such employer does not intend to or will not be able to make timely payment or deposit of the amounts of tax required ... to be deducted and withheld by such employer ... such lender, surety, or other person shall be liable in his own person and estate to the United States in a sum equal to the taxes ... which are not paid over to the United States by such employer.
This method of assigning liability was necessary because prior to 1966, only "employers" were liable for income, social security, and railroad retirement taxes required to be withheld and deducted from employee wages—despite the many situations in which persons other than

employers directly or indirectly paid the wages. Problems arose when these third parties paid the employees only "net" wages, neglecting to pay to the government the withholding taxes due. When this occurred, the government was often unable to collect the taxes required to be deducted and withheld, despite the fact that it was obligated to credit the employees' accounts for them. This practice, commonly known as "net payroll financing" was apparently quite prevalent in the construction industry. Congress thought it fair to impose liability on third parties in this situation because they sit in essentially the same position vis-a-vis control over payroll funds and access to information as the employer itself. *See United States v. Jersey Shore State Bank*, 781 F.2d 974, 975–76 (3d Cir.1986), *aff'd*, — U.S. —, 107 S.Ct. 782, 93 L.Ed.2d 800 (1987).

require such notice to a lender subject to section 3505(b) liability. Alternatively, and more relevant for our purposes, the government argued that even if section 6303(a) required notice, failure to provide it barred only administrative proceedings such as liens and levies and not civil proceedings like the one before the court.

The court first concluded that section 6303(a) mandated notice to a lender subject to section 3505(b) liability. 721 F.2d at 1100. In addition, the court held that failure to provide notice under section 6303(a) precluded even a civil action. *Id.* The court gave several reasons for this holding.

First, section 6303(a) itself did not limit the right to notice as dependent on which tax collection option the government used. *Id.* Secondly, section 6303(a) required notice of the assessment of unpaid taxes in order to protect the person liable for paying the taxes, and this rationale applied regardless of which collection mechanism was used. *Id.* Finally, the court rejected the government's reliance on *Jenkins v. Smith,* 99 F.2d 827 (2d Cir.1938).

In *Jenkins,* the Second Circuit interpreted 26 U.S.C. § 1545, a predecessor statute to the notice provision of section 6303. The *Jenkins* court decided that failure of the tax Collector to give notice of an assessment made by the Commissioner barred the Collector's right to collect taxes by levy and distraint but not the right of the United States to institute a civil collection proceeding. *Accord, United States v. Erie Forge Co.,* 191 F.2d 627 (3d Cir.1951), *cert. denied,* 343 U.S. 930, 72 S.Ct. 759, 96 L.Ed. 1339 (1952); *Sherwood v. United States,* 246 F.Supp. 502 (E.D.N.Y.1965). However, the *Associates* court rejected the government's argument that these cases established its right to pursue a civil action in the absence of proper notice.

Initially, the *Associates* court noted that section 1545 was part of a statutory scheme quite different from that of which section 6303 is now a part. For instance, under the earlier scheme, the tax Collector had no authority to collect taxes by means of a civil proceeding, whereas, under the Internal Revenue Code of which section 6303 is a part, the Secretary of the Treasury or his delegate may collect the unpaid tax by levy (§ 6331) or by civil proceeding (§ 7401). The Seventh Circuit also noted that the *Jenkins* court premised its holding that a civil proceeding by the United States was not barred by lack of notice by the Collector on the fact that section 1545 limited "only the *Collector's* power to 'collect' and he can 'collect' a tax only by [levy and] distress" only after serving notice upon the taxpayer. 99 F.2d at 828 (emphasis added). Accordingly, the Seventh Circuit held that by necessary implication, where the same official (the Secretary of the Treasury or his delegate under the Internal Revenue Code) has power both to collect by levy and to authorize civil collection proceedings, *Jenkins* supports the conclusion that failure to provide statutorily required notice bars both recovery methods. 721 F.2d at 1100.

In the instant case, the government simply contends that *Associates* was wrongly decided. In turn, it relies on *United States v. Jersey Shore State Bank,* 781 F.2d 974 (3d Cir.1986), *aff'd,* —— U.S. ——, 107 S.Ct. 782, 93 L.Ed.2d 800 (1987). There, the government asserted that Jersey Shore was personally liable under section 3505 for the unpaid federal withholding tax liabilities of Pennmount Industries, Inc. The bank, while admitting making loans to Pennmount, alleged that the complaint failed to state a claim upon which relief could be granted because the United States did not provide it with timely notice of the assessments against Pennmount, which it asserted was required by Internal Revenue Code § 6303(a). In ruling that Jersey Shore was not entitled to notice under section 6303, the Third Circuit expressly rejected the holding of *Associates.*

The *Jersey Shore* court first reviewed in detail the most recent predecessor statute to section 6303, noting that under the Internal Revenue Code of 1939, the notice provision explicitly applied only to the collection efforts of the tax Collector who by statute was authorized to collect taxes solely by administrative means, such as levying on the taxpayer's property. I.R.C. § 3655

(1952). By contrast, the notice provision did not apply to the Commissioner of Internal Revenue who was authorized to bring civil suits to collect taxes owed. *Id.* at § 3740. In addition, it was long settled under that Act that the government's failure to assess its taxes did not preclude it from exercising its common law right to sue for taxes. 781 F.2d 979. Likewise, it was equally well settled that where the government had assessed the taxes but failed to provide the taxpayer with notice of that assessment, it could still proceed by suit to collect the taxes owed. *Id.* The court then explained the rationale for such a notice requirement:

> Where the government intends to proceed administratively to collect the taxes due, the need for the notice provided by section 6303(a) and its predecessor statutes is readily apparent. The 1939 and 1954 Codes both provide that upon assessment and demand, all of the taxpayer's property, both real and personal, becomes subject to a lien in favor of the United States. IRC §§ 6321, 6322 (1982); IRC §§ 3670, 3671 (1952). If the taxpayer neglects or refuses to pay the taxes within ten days after notice and demand, the government may levy on or distrain any property belonging to the taxpayer on which a tax lien exists. IRC § 6331(a), (b) (1982); IRC §§ 3690, 3692, 3700 (1952). And after levying on or distraining the taxpayer's property, the government may sell it to satisfy the taxes owed. IRC §§ 6331(b), 6335 (1982); IRC § 3693, 3695(a)-(b), 3712 (1952). Thus, given the scope of the government's power to collect summarily the taxes owed under this statutory scheme

the notice required by sections 3655 and 6303(a) plays an important role: "[t]he purpose of requiring such a notice and demand is for the protection of the taxpayer." *Macatee, Inc.*, 214 F.2d [717] at 719.

*Jersey Shore,* 781 F.2d at 979.

In contrast, the Third Circuit could not see the need for notice under section 6303 where the government was unable to proceed administratively. If the government cannot assess the third party's liability, it cannot employ its summary collection methods against that party. Thus, such a third party is in no danger of having his property immediately seized or attached to satisfy the obligation. "In a civil action, then, service of the government's complaint provides the party with all the notice and protection required; thus, the language 'each person liable for the unpaid tax,' then, refers only to those parties against whom the taxes have been assessed, and against whom the government can proceed administratively." *Id.* at 980.

The *Jersey Shore* court then reviewed the Seventh Circuit's rejection of the *Jenkins* doctrine, finding that the Seventh Circuit focused primarily upon the official in whom the power to collect the taxes had been lodged, rather than on the means by which that official sought to collect them. After an examination of the administrative and legislative history leading up to the enactment of the Internal Revenue Code of 1954, the *Jersey Shore* court found that the Seventh Circuit misconceived the effect of any organizational changes brought about by its enactment.[5] Consideration of the

**5.** That legislative history is recounted as follows:

First, the Committee Reports accompanying section 6303(a) indicate that Congress intended to make only "two changes from existing law," neither of which affects who is entitled to notice of an assessment. H.R.Rep. No. 1337, 83d Cong., 2d Sess. A405–06, *reprinted in* 1954 U.S. Code Cong. & Ad.News 4017, 4553; S.Rep. No. 1622, 83d Cong. 2d Sess. 574, *reprinted in* 1954 U.S.Code Cong. & Ad. News 4621, 5222–23.

Second, the organizational changes that the court placed so much weight on in *Associates Commercial Corp.* resulted not from Congres-

sional action with respect to the 1954 Code, but from executive action under the 1939 Code. The current organization of the Internal Revenue Service stems from two reorganization plans promulgated by President Truman in 1950 and 1952, which Congress subsequently incorporated by reference when it enacted the 1954 Code. I.R.C. § 7804 (1982). For example, the power to collect taxes both administratively and by means of a civil proceeding was first vested in the Secretary of the Treasury *under the Internal Revenue Code of 1939* by Reorg. Plan No. 26 of 1950, 15 Fed.Reg. 4935 (1950), *reprinted in* 5 U.S.C.A. app. at 274–75 (West 1967). Similarly, the

relationship between section 6303(a) of the 1954 Code and its predecessor statutes combined with the organizational changes effected by President Truman prior to the enactment of the 1954 Code, led the Third Circuit to conclude that the critical variable is the manner in which the government seeks to collect the taxes, not the official entrusted with that power. Thus, the *Jersey Shore* court held that section 6303(a) requires notice only to those individuals against whom the government intends to proceed administratively.[6] 781 F.2d at 980.

We are convinced that the reasoning of the Third Circuit in *Jersey Shore* is correct. The notice provision of section 6303(a) was designed to protect the taxpayer only where the summary powers of the IRS to collect taxes administratively are concerned, and does not restrict the government's right to maintain a civil action against the taxpayer to obtain judgment for the amount due.

This holding is also consistent with our decision in *United States v. Nashville, C. & St. L. Ry.*, 249 F. 678 (6th Cir.1918), where we held that an assessment was not a prerequisite for the government to maintain a common law action to recover the tax owed, provided another remedy has not been made exclusive. 249 F. at 681. *See also Dollar Savings Bank v. United States*, 86 U.S. (19 Wall.) 227, 239–40, 22 L.Ed. 80 (1873); *Macatee, Inc. v. United States*, 214 F.2d 717, 719–20 (5th Cir.1954) (government's right to bring suit without assessment based simply on its common law right to sue on a debt, which exists independently of any statute).

Support for this position also lies in the fact that the Code does not indicate that failure to provide notice of assessment and demand for payment precludes the government from maintaining a civil action, whereas section 6321 conditions the existence of a tax lien upon demand for payment. Similarly, section 6331 authorizes the IRS to collect by levy only where a taxpayer fails to pay a tax "within 10 days after notice and demand." In contrast, section 6501(a) recognizes that a suit to collect taxes may be brought without assessment having been made. That section states, in relevant part, that "no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such [three year] period." 26 U.S.C. § 6501(a).

Accordingly, we hold that under the circumstances presented here notice of assessment and demand for payment only would be necessary if the government wanted to proceed administratively to collect the tax. As a result, the government's failure to provide defendants with a copy of the notice of assessment and demand for payment does not bar its suit to collect defendants' tax liability. The judgment of the district court is REVERSED and the case is REMANDED for proceedings consistent with this opinion.

office of the Collector was abolished not by the enactment of the 1954 Code, but by the Reorg. Plan No. 1 of 1952, 17 Fed.Reg. 2243, *reprinted in* 5 U.S.C.A. app. at 280–81 (West 1967).

In neither case is there any indication that the President intended any change with respect to who was to receive notice of an assessment under the 1939 Code. Rather, the reorganizations had two primary goals: first, to increase the efficiency of the Department of the Treasury and the Internal Revenue Service; and second, to assure the honest and impartial administration of the internal revenue acts. In fact, to the limited extent that the administrative history speaks to the issue, it indicates an intent not to change the law substantively.
781 F.2d at 980–81 (citations omitted).

6. Although not directly addressing the issue with which we are primarily concerned, the Supreme Court, in affirming the *Jersey Shore* decision, held that lenders were not entitled to section 6303(a) notice before the government could bring a civil suit under section 3505 for withholding taxes. 107 S.Ct. at 786–787. This ruling overrules the decision in *Associates Commercial Corp.* and cases following it.