**Edward J. O'HARE, Plaintiff,**

v.

**UNITED STATES of America, Defendant, Third–Party Plaintiff–Appellee,**

**Commercial Credit Business Loans, Inc., Third–Party Defendant–Appellant.**

**No. 87–2107.**

United States Court of Appeals, Sixth Circuit.

Argued May 15, 1989.

Decided July 10, 1989.

___

Melanie LaFave (argued), Jaffe, Snider, Raitt & Heuer, P.C., Detroit, Mich., for third-party defendant-appellant.

Ellen Christensen, Asst. U.S. Atty., Detroit, Mich., Gary R. Allen (lead counsel), William S. Rose, Jr., Tax Div., Dept. of Justice, Washington, D.C., Wynette J. Hewett, James H. Love (argued), Chicago, Ill., for defendant, third-party plaintiff-appellee.

Before MARTIN and BOGGS, Circuit Judges; and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Commercial Credit Business Loans, Inc. (CCBL) appeals from the district court's entry of judgment in accordance with a jury verdict in favor of the United States in this civil action brought pursuant to IRC § 3505. For the following reasons, we affirm the district court's judgment.

I.

On December 1, 1975, Hope Picture Frame Company entered into a financing agreement with CCBL, a commercial finance company. CCBL began to finance Hope Picture Frame's operations immediately. CCBL transferred all advances to Hope Picture Frame by wire directly into its four bank accounts: payroll, general, commission, and freight.

During the time period at issue in the instant case, 1980–81, CCBL made regular advances, usually daily, to Hope Picture Frame's bank accounts. CCBL wire transferred $1,964,265.83 into Hope Picture Frame's payroll account alone during this period.

CCBL was aware that Hope Picture Frame was delinquent in its payment of income and social security taxes required to be deducted and withheld from the

wages paid to its employees. In fact, Hope Picture Frame's withholding tax delinquency for 1980–81 totalled $260,400.08.

Hope Picture Frame's owner, Edward J. O'Hare, was assessed the full amount of delinquent withholding taxes as a responsible person under IRC § 6672.[1] O'Hare filed suit challenging the assessment. O'Hare deposed that Hope Picture Frame's withholding taxes had not been paid because CCBL had refused to wire transfer funds to cover checks which had been written to the Internal Revenue Service (IRS).

Thereafter, on July 16, 1986, the United States filed suit against CCBL, alleging lender liability pursuant to IRC § 3505.[2]

The cases were consolidated. On October 28, 1987, O'Hare lost a directed verdict to the United States for the full amount of withholding tax allegedly owed. The case against CCBL went to jury trial, and a jury verdict was returned against CCBL on the same day.

Appellant CCBL filed timely notice of appeal. CCBL asks this court to decide whether the statute of limitations bars this action; whether the failure to give a working capital loan instruction constitutes reversible error; and whether the regulation which allows the government to recover interest from the lender from the date when the employer's return is filed is arbitrary and unenforceable.

1. IRC § 6672 provides in relevant part as follows:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

2. IRC § 3505 provides in relevant part as follows:

> If a lender, surety, or other person supplies funds to or for the account of an employer for the specific purpose of paying wages of the employees of such employer, with actual notice or knowledge (within the meaning of section 6323(i)(1)) that such employer does not intend to or will not be able to make timely payment or deposit of the amounts of

II.

A.

■ IRC § 6501(a) provides the general rule for the limitations on assessment and collection of taxes as follows:

> Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.

IRC § 6502(a)(1) provides further that where the assessment of any tax has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court begun within six years after the assessment of the tax.

Although IRC § 3505, the substantive provision at issue here, does not declare that a lender is liable for the unpaid tax, but rather that the lender is liable for all or part of a sum equal to the tax, *see Jersey*

> tax required by this subtitle to be deducted and withheld by such employer from such wages, such lender, surety, or other person shall be liable in his own person and estate to the United States in a sum equal to the taxes (together with interest) which are not paid over to the United States by such employer with respect to such wages. However, the liability of such lender, surety, or other person shall be limited to an amount equal to 25 percent of the amount so supplied to or for the account of such employer for such purpose.

IRC § 6323(i)(1) provides in relevant part as follows:

> For purposes of this subchapter, an organization shall be deemed for purposes of a particular transaction to have actual notice or knowledge of any fact from the time such fact is brought to the attention of the individual conducting such transaction, and in any event from the time such fact would have been brought to such individual's attention if the organization had exercised due diligence.

*Shore State Bank v. United States*, 479 U.S. 442, 446, 107 S.Ct. 782, 785, 93 L.Ed.2d 800 (1987), in *United States v. Updike*, 281 U.S. 489, 50 S.Ct. 367, 74 L.Ed. 984 (1930), the Supreme Court held in a similar situation that the government was entitled to the same period of limitations for collecting the third-party liability as for collecting from the taxpayer. Thus, under *Updike*, sections 6501(a) and 6502(a)(1) apply to the instant case even though appellant is not the taxpayer.

Appellant acknowledges that these statutes of limitations potentially apply, but argues that the six-year statute of limitations of section 6502(a)(1) cannot apply to it because although the employer-taxpayer was assessed the tax within three years, CCBL was not. This argument lacks merit for two primary reasons.

First, the Treasury Regulations expressly provide that "[i]n the event the lender, surety, or other person does not satisfy the liability imposed by section 3505, the United States may collect the liability by appropriate civil proceeding commenced within six years after assessment of the tax against the employer." Treas.Reg. § 31.3505–1(d)(1). *See, e.g., United States v. Hunter Eng'rs & Constructors, Inc.*, 789 F.2d 1436, 1440 (9th Cir.1986), *cert. denied*, 479 U.S. 1063, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987). Thus, the regulations permit a civil proceeding to be commenced against a lender pursuant to section 3505 within six years although only the person responsible for the tax pursuant to section 6672 was assessed.

Second, in *Jersey Shore State Bank*, 479 U.S. at 449, 107 S.Ct. at 786, in a different context the Supreme Court made clear that Congress did not intend to require the government to provide a lender with assessment notice under IRC § 6303(a) before bringing a civil suit to collect under section 3505. In that case, Jersey Shore State Bank had argued that a third-party lender is unfairly prejudiced by lack of an assessment notice because of the effect of an assessment on the statute of limitations for collection suits. The Supreme Court did not agree.

We also reject Jersey Shore's related contention that a third-party lender is unfairly prejudiced by lack of an assessment notice because of the effect of an assessment on the statute of limitations for collection suits. Under the general rule set forth in § 6501(a), 'the amount of any tax imposed ... shall be assessed within 3 years after the return was filed ... and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.' Nevertheless, where a proper assessment has been made, the unpaid tax generally 'may be collected by levy or by a proceeding in court ... begun ... within 6 years after the assessment.' § 6502(a)(1). Under Jersey Shore's reading of these provisions, the Government enjoys an additional 6–year limitations period for collecting against a lender if it makes an assessment against the employer within three years after the corresponding employment tax return is filed. Jersey Shore submits that Congress could not have intended the Government to benefit from this longer statute of limitations when it seeks to collect against a lender without also requiring the Government to provide the lender with notice of the assessment against the employer.

Assuming, without deciding, that Jersey Shore's reading of the statute of limitations provisions is correct, we are not convinced that they render our construction of § 6303(a) implausible. A lender is not liable under § 3505 unless it either 'pays wages directly' to an employee or supplies funds for the wages with 'actual notice or knowledge' that the employer is either unable to make timely payment of the required withholding taxes or has no intention of doing so. The lender is deemed to have such actual notice or knowledge from the time the lender, in the exercise of due diligence, would have been aware that the employer would not or could not make timely payment. § 6323(i)(1). Accordingly, a prudent lender could be alerted to its liability under § 3505 at the time it engaged in what the Government describes as 'net

payroll financing,' a practice whereby the lender provides funds for payment of employees' net wages, but not funds for payment of withholding taxes. Thus, even without § 6303(a) notice, such a lender could take steps to protect itself against the possibility of a future § 3505 suit. The Committee Reports concerning § 3505 demonstrate that Congress considered precautions third parties could take to protect themselves:

> '[S]ureties can protect themselves against any losses attributable to withholding taxes by including this risk of liability in establishing their premiums, and lenders by including the amounts in their loans and taking adequate security.' S.Rep. No. 1708, 89th Cong., 2d Sess., 23 (1966); H.R.Rep. No. 1884, 89th Cong., 2d Sess., 22 (1966).

As the Court of Appeals recognized, this passage suggests that 'Congress envisioned a system in which third parties would take their potential liability under section 3505 into consideration at the time they entered into the transaction exposing them to liability under the statute.'

*Id.* at 448–49, 107 S.Ct. at 786–87 (footnote omitted). *Cf. United States v. Berman,* 825 F.2d 1053, 1060 (6th Cir.1987) (holding that notice of assessment provision of section 6303(a) was designed to protect the taxpayer only where the summary powers of the IRS to collect taxes administratively are concerned, and does not restrict the government's right to maintain a civil action against the taxpayer to obtain judgment for the amount due).

Appellant states without support or explanation that Treasury Regulation 31.-3505–1(d)(1) is not consistent with the statutory provisions. This argument would seem to have no merit in light of the Supreme Court's holding in *Jersey Shore State Bank* that in general a third-party lender need not get notice of assessment.

The cases cited in support of appellant's position are primarily pre-*Jersey Shore State Bank* cases which have been repudiated. *See, e.g., United States v. Messina Builders & Contractors,* 801 F.2d 1029

(8th Cir.1986), *vacated* 480 U.S. 927, 107 S.Ct. 1560, 94 L.Ed.2d 754 (1987); *United States v. Associates Commercial Corp.,* 721 F.2d 1094 (7th Cir.1983) (both noted in footnote 4 of *Jersey Shore State Bank* ).

In *Hunter Engineers & Constructors,* a case similar to the instant case, the Ninth Circuit held that assessments against the taxpayer served to extend the statute of limitations against the third-party lender. The court reasoned as follows:

> Aside from congressional intent, we conclude that a shorter limitations period for lenders than employers would serve to thwart the government's efforts to collect the tax liabilities from the employer. The government would be forced to file an action against the lender within three years of the assessment even if collection efforts against the employer were ongoing. Although Hunter would benefit from a shorter limitations period, lenders as a lot would suffer if the government was forced to look to them for collection sooner than against employers.

> Finally, Hunter argues that an extended statute of limitations in the absence of notice creates an unreasonable source of prejudice to the lender. The answer, we believe, is found in Congress' formulation of section 3505. Liability is imposed on a third party lender only if the lender has actual knowledge that the employer does not intend to pay the required taxes, or if the lender itself is directly paying net wages. 26 U.S.C. §§ 3505(b) and (a). Thus, the lender is 'actually or constructively aware of its potential liability for the taxes required to be deducted and withheld.' While we agree that this statutory scheme does not wholly negate the possibility of prejudice to the lender, it is clear that Congress sought to impose liability only when the government could meet its burden of proof under section 3505. Thus, we conclude that a lender who is liable under section 3505 must have necessarily been intimately involved in the employer's failure to pay taxes and consequently does not need formal

notice of such liability to enable it to defend itself in a subsequent action.

789 F.2d 1441 (citations omitted).

We agree. Accordingly, we reject appellant's argument that the statute of limitations bars this action.

## B.

■ "The function of the reviewing court with respect to instructions is to satisfy itself that the instructions show no tendency to confuse or mislead the jury with respect to the applicable principles of law." 9 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2558 p. 668 (1971).

In the instant case, appellant submitted the following requested instruction:

The law provides that a lender is not liable for withholding if its loan is in the nature of a working capital loan. The law provides:

The provisions of Section 3505(b) do not apply in the case of an ordinary working capital loan made to an employer, even though the person supplying the funds knows that part of the funds advanced may be used to make wage payments in the ordinary course of business. Generally, an ordinary working capital loan is a loan which is made to enable the borrower to meet current obligations as they arise. The person supplying the funds is not obligated to determine the specific use of an ordinary working capital loan or the ability of the employer to pay the amounts of tax required by subtitle C of the Code to be deducted and withheld. However, Section 3505(b) is applicable where the person supplying the funds has actual notice or knowledge (within the meaning of Section 6323(i)(1)) at the time of the advance that the funds, or portion thereof, are to be used specifically to pay net wages, whether or not the written agreement under which the funds are advanced states a different purpose. Whether or not a lender has actual notice or knowledge that the funds are to be used to pay net wages, or merely

that the funds may be so used, depends upon the facts and circumstances of each case.

Treas.Reg. § 31.3505–1(3).

Appellant objected to the district court's refusal to give the requested instruction.

Appellant argues that it was entitled to the requested instruction because it did not *control* Hope Picture Frame's use of funds after their wire transfer to its payroll account. This argument lacks merit.

First, there is no evidence that an ordinary working capital loan was involved in the instant case. All advances made by CCBL to Hope Picture Frame were by wire transfer directly into four separate bank accounts. During the period in question, CCBL was specifically requested to transfer $1,964,265.83 into Hope Picture Frame's payroll account. CCBL complied with this request.

CCBL does not argue that these funds were not transferred directly into Hope Picture Frame's payroll account. Furthermore, CCBL admits that it was aware of the delinquencies in the payment of withholding tax. CCBL maintains that it did not control how the funds were used after they were transferred. *See, e.g.,* testimony of Stephen Kanarian:

We were responsible for seeing that the funds they requested and to specific accounts of their's were transferred from our bank, from our accounts into their accounts.

But, we had no control over the disbursements, or what they did with those funds. Nor did we want control.

Control, however, is simply not the test required by the Treasury Regulation; the test is actual notice or knowledge.

Accordingly, we reject appellant's argument that the district court erred in refusing to give a working capital loan instruction.

## C.

■ Section 3505(b) provides in relevant part as follows:

[S]uch lender, surety, or other person shall be liable ... in a sum equal to the taxes (together with interest) which are not paid over to the United States by such employer with respect to such wages. However, the liability of such lender, surety, or other person shall be limited to an amount equal to 25 percent of the amount so supplied to or for the account of such employer for such purpose.

The Treasury Regulations provide that a lender who violates section 3505

shall be liable in his own person and estate for payment to the United States of an amount equal to the sum of the taxes which are required by subtitle C of the Code to be deducted and withheld from wages paid on or after January 1, 1967, and which are not paid over to the United States by the employer, and interest from the due date of the employer's return relating to such taxes. However, the liability of the lender, surety, or other person for such taxes shall not exceed 25 percent of the amount supplied by him for the payment of wages. The preceding sentence and the second sentence of section 3505(b) limit the liability of a lender, surety, or other person arising solely by reason of section 3505, and they do not limit the liability which the lender, surety or other person may incur to the United States as a third-party beneficiary of an agreement between the lender, surety, or other person and the employer. The liability of a lender, surety, or other person does not include penalties imposed on the taxpayer.

Treas.Reg. § 31.3505–1(b)(1)(ii).

Appellant argues that this regulation is arbitrary and should not be enforced. We disagree.

Deference is ordinarily owing to the agency's construction of a regulation if the court can conclude that the regulation "implement[s] the congressional mandate in some reasonable manner." *United States v. Correll*, 389 U.S. 299, 307, 88 S.Ct. 445, 450, 19 L.Ed.2d 537 (1967), *cited in, United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 24, 102 S.Ct. 821, 827, 70 L.Ed.2d 792

(1982). However, the interpretation of a regulation promulgated under the general authority to prescribe all needed rules and regulations is owed less deference than a regulation issued under a specific grant of authority to define a statutory term or prescribe a method of executing a statutory provision. *Rowan Cos. v. United States*, 452 U.S. 247, 253, 101 S.Ct. 2288, 2292, 68 L.Ed.2d 814 (1981).

This court has interpreted the regulation at issue in this case in *United States v. Intercontinental Industries, Inc.*, 635 F.2d 1215 (6th Cir.1980). In that case, $250,395.78 had been advanced to the employer and was used for the payment of wages as to which the lender knew that no withholding taxes would be collected or paid. In accordance with section 3505(b), the district court found the lender liable for 25 percent of that amount, or $62,598.95. The district court declined to find that the lender was also liable for prejudgment interest, since that would have caused the lender's liability to exceed the 25 percent limitation imposed by section 3505(b). This court agreed. This court held that section 3505(b) (and the regulation) limits total liability for taxes *and* prejudgment interest to 25 percent of the amount supplied for wages.

This regulation as construed in *Intercontinental* is reasonable especially in light of the Supreme Court's statement in *Jersey Shore State Bank*, 479 U.S. at 449, 107 S.Ct. at 786, that " 'Congress envisioned a system in which third parties would take their potential liability under section 3505 into consideration *at the time they entered into the transaction exposing them to liability under the statute.*' "

In the instant case, the unpaid tax plus interest at the statutory rate came to $574,231. The parties stipulated that CCBL advanced $1,964,265 to Hope's payroll account during the time in question. Therefore, judgment was limited to 25 percent of $1,964,265, or $491,066. Thus, prejudgment interest was limited as this court indicated it should be in *Intercontinental*. The statute and regulation which *Intercontinental* construed are reasonable. Appel-

lant cannot be forced to pay an infinite amount of prejudgment interest as it would have this court believe.

For the foregoing reasons, the district court's judgment is AFFIRMED in all respects.