Linwood BLACKSTON, et al., Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. MJG–88–1454.

United States District Court, D. Maryland.

Nov. 25, 1991.

Stephen P. Kauffman, Wright, Constable & Skeen, Baltimore, Md., for plaintiffs.

Michael J. Martineau, U.S. Dept. of Justice, Washington, D.C., Larry D. Adams, Asst. U.S. Atty., Baltimore, Md., for defendant.

GARBIS, District Judge.

Plaintiffs Linwood Blackston and Barbara Blackston ("the taxpayers") are, and were at all times relevant to this case, citizens of the United States residing in Baltimore, Maryland. The taxpayers filed timely Joint Federal Income Tax Returns for the years 1979, 1980, and 1981. On or about April 15, 1983, the Internal Revenue Service issued a statutory notice of deficiency for the years 1977 through 1981. The taxpayers contested the proposed deficiencies in the United States Tax Court. Ultimately, the Tax Court case was resolved by a settlement (stipulated decision) in which the parties agreed to the following deficiencies in tax and penalties (plus interest thereon in accordance with law):

| Year | Tax | Penalty (Negligence) |
|---|---|---|
| 1977 | 0 | 0 |
| 1978 | 0 | 0 |
| 1979 | $2,577 | $129 |
| 1980 | $4,405 | $220 |
| 1981 | $4,480 | $224 |

The above-noted deficiencies for 1979, 1980, and 1981 were assessed on January 28, 1985, pursuant to § 6503(a)(1).[1]

The issues presented are whether the Internal Revenue Service has complied with § 6303(a) of the Internal Revenue Code by giving notice to the taxpayers stating the amount due and demanding payment within 60 days after the making of the subject assessments and, if not, what is the effect of the Service's failure.

---

1. All statutory references herein are to the Internal Revenue Code, 26 U.S.C.

*Jurisdictional Prerequisites*

The substantive issues concern the validity of assessments of deficiencies in income tax, penalties and interest for the years 1979, 1980 and 1981. As to the year 1979, the taxpayers made full payment on or about March 18, 1988 and timely filed a claim for refund on or about the same date. On May 4, 1988 the claim for refund was denied. The taxpayers timely commenced this action, seeking a refund with regard to the year 1979. § 6532(a). Thus, the jurisdictional prerequisites have been met for the taxpayers to sue for a refund for 1979. See, generally, M. Garbis, P. Junghans, S. Struntz, Federal Tax Litigation, Para. 15.01 et seq. (1985).

■ As to 1980 and 1981, the Government filed a Counterclaim to reduce to judgment the balance due on the assessments for those years. By virtue of the Government's counterclaim, the Court has jurisdiction to determine the validity of the 1980 and 1981 assessments. *See Id.* Par. 15.02[6]

*Noncompliance With Section 6303(a)*

Section 6303(a) provides in relevant part that:

> ... [The IRS] shall, as soon as practicable, and within 60 days after the making of an assessment of a tax ... give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof. Said notice shall ... be sent by mail to such person's last known address.

■ The I.R.S. records reflect that a first notice of assessment and demand for payment ("Notice and Demand") was mailed to the taxpayers at their current address on or about January 28, 1985, within 60 days of the assessments. It is stipulated, however, that the first notice which the taxpayers actually received relating to the subject deficiencies was dated May 31, 1985–more than 60 days after the assess-

ments. The question presented is whether the Service in fact properly mailed a notice and demand on or about January 28, 1985 as reflected in its computer generated records.[2]

■ It is the Government's position that the mere fact that the Internal Revenue Service is able to present a computer generated printout reflecting that a Notice of Demand had been sent on January 28, 1988 establishes an *irrebuttable presumption* that the notice was in fact sent. This Court rejects this position. A similar contention had been rejected by the district court in the case of *United States v. Berman*, 825 F.2d 1053, 1056–57 (6th Cir.1987). As found by the trial court in the *Berman* case, and as this Court finds from the evidence presented here, there are sufficient irregularities presented in the IRS computer evidence to cause this Court to doubt its reliability. Therefore, the Court refuses to accept the records as conclusive. In particular, the Court notes that the I.R.S. records reflect the mailing of a first notice on January 28, 1985 and the mailing of a second notice some four months later on May 31, 1985. However, the IRS Service Center computer is programmed to send the second notice five weeks after the first notice. M. Saltzman, IRS Practice and Procedure Para. 14.03(3) (2nd ed. 1991) and Para. 14.03 (1st ed. 1981); *See also* Salchow, *IRS Practice & Policy*, Para. 1010.A.2.a (1991).

This Court was sufficiently concerned about the matter to ask the Government at argument, and in a post trial Order, the following:

> The I.R.S. records reflect the mailing of a first notice on January 28, 1985 and a second notice on May 31, 1985 (a four month period) while the I.R.S. manual allegedly indicates that there would be a much shorter period between a first and second notice. How can this inconsistency be explained without resulting in un-

---

**2.** The Government, quite correctly, notes that the fact that the taxpayers did not receive the alleged January 28, 1985 first notice is not determinative. So long as the notice was timely mailed to the taxpayers' last known address, the IRS has complied with § 6303(a) even absent receipt.

certainty as to the accuracy of either the January or May date, or both?

In response the Government stated:

[A]fter consultation with the appropriate IRS representative, the United States does not intend to proffer any further evidence on this particular point.

■ The Court interprets this response to mean that the Government cannot provide any satisfactory answer to the Court's question. Therefore, on the record in this case, which includes the Government's refusal (or inability) to provide an explanation of the inconsistency of its computer generated records as to the date of the first notice,[3] the Court finds as a fact that the IRS did not comply with § 6303(a) by sending a Notice and Demand within 60 days of the subject assessments. This finding requires the Court to address the question of the effect of such a failure.

*Effect of Noncompliance with Section 6303(a)*

■ Having found that the IRS failed to comply with § 6303(a) by not sending a notice and demand within 60 days of the subject assessments, the Court must determine the effect of such a failure. In this case, the issue arises in both a refund context[4] and in a collection context.[5] In both contexts the issue presented is whether the failure to send a timely notice and demand renders the January 28, 1985 assessment void altogether or whether it leaves the assessment valid but bars the Internal Revenue Service from utilizing its lien and levy collection powers.

There is no Fourth Circuit precedent addressing the issue presented. The decisions in other circuits addressing the absence of a timely notice and demand do not answer all of the questions presented in this case. *See United States v. Chila,* 871 F.2d 1015 (11th Cir.1989); *United States v. Berman,* 825 F.2d 1053 (6th Cir.1987) *on remand* U.S.T.C. 88–2 Para. 9550, 1988 WL 126557 (S.D.Ohio 1988) *after remand* 884 F.2d 916 (6th Cir.1989); *Marvel v. United States,* 719 F.2d 1507 (10th Cir.1983). Nevertheless, this Court concludes, consistent with the views expressed in *Berman, Marvel,* and *Chila* that the appropriate "sanction" against the I.R.S. for its failure to comply the § 6303(a) notice and demand requirement is to take away its awesome nonjudicial collection powers. It would be irrational to conclude that an assessment becomes void after 60 days if there is no notice and demand. Such a rule of law would serve only to provide a windfall to permit taxpayers to avoid paying valid assessments of determined tax liabilities because of an I.R.S. clerical error in failing to mail a notice and demand to the taxpayer's last known address.

The Court's decision is in accord with the views of leading publications on federal tax procedures. As stated in M. Saltzman, IRS Practice and Procedure, Para. 14.05(2) (2nd ed. 1991):

Under the collection mechanism established by the Code, once tax has been assessed, a taxpayer is subject to the summary nonjudicial procedures (lien and levy) available to the Service to collect the assessed tax. The notice and demand provided by Section 6303 gives the taxpayer warning that the taxpayer must take some action to resolve the delinquent account if these summary collection procedures are to be avoided. Thus, preseizure notice serves an important practical, and possibly a due process, purpose in the statutory scheme. A taxpayer's liability is recorded by the official act of assessment, but where no Section 6303 notice is given, or an invalid notice is given, a statutory prerequisite is missing and, absent compliance with the Code, any collection action that follows is invalid. No lien can arise, nor can a levy be effective, absent a notice and demand.

---

**3.** If the first and second notices were, in fact, mailed 5 weeks apart then the computer records are erroneous as to the January 28, 1985 date for the first notice and/or the May 31, 1985 date for the second notice.

**4.** *I.e.* for 1979 as to which the taxpayers have made full payment and seek recovery of what they have paid.

**5.** For 1980 and 1981 the IRS has filed suit to reduce an assessment of judgment.

Where the government elects to collect tax by a civil suit, the complaint gives the taxpayer notice, and collection cannot be taken without court approval. A Section 6303 notice does not appear to be required where liability is asserted in a judicial proceeding. [Footnotes in original omitted]

And, as stated in Salchow, *IRS Practice & Policy,* Para. 1010.A.2.d (1991):

Since the administrative collection remedies require a timely and properly issued notice and demand, it is in the taxpayer's interest initially to determine whether the IRS made such notice and demand. The general rule is that no tax lien arises until the IRS makes a demand for payment. *Myrick v. United States,* 296 F.2d 312 (5th Cir.1961). Without a valid notice and demand, there can be no tax lien; without a tax lien, the IRS cannot levy against the taxpayer's property. The IRS' failure to serve a timely notice and demand, however, does not prevent the government from instituting a judicial proceeding to collect the tax liability. *United States v. Chila,* 871 F.2d 1015 (11th Cir.1989); *United States v. Berman,* 825 F.2d 1053 (6th Cir.1983); *Marvel v. United States,* 719 F.2d [1507] 1513 (10th Cir.1983).

### The 1979 Refund Claim

[6, 7] As to the year 1979, the outcome depends upon the manner in which the taxes were collected. That is, was collection effected by the illegal use of liens and levies in the absence of a notice and demand. If so, the taxpayers would be entitled to a refund.[6] Here, the 1979 taxes were paid by the taxpayers' check and not through the use of the lien or levy power. Accordingly, there can be no refund for 1979.

The Court has considered the argument that the taxpayers here paid by check only because of the threat of nonjudicial collection action. Hence, it could be argued that the I.R.S., as a practical matter, did utilize its nonjudicial collection powers. However, it is fair to say that many, if not virtually all, tax payments are made because the taxpayer realizes that a failure to pay what is owed will result in I.R.S. collection activity. Accordingly, the effect of the taxpayer's argument would be to provide a windfall to all taxpayers who do not receive a timely notice and demand but pay their tax liability anyhow. Thus, in a not uncommon situation, the I.R.S. might innocently misaddress a notice and demand but the taxpayer would nevertheless become aware of the assessment more than 60 days after it is made. At that point the taxpayer could (and should) pay the I.R.S. (resulting in a closing of the account) without any reason for the IRS to be aware that it had made a clerical error in issuing a notice and demand. It would be strange indeed if this would result in giving the taxpayer the ability to get a refund of the payment and avoid entirely his determined liability.

It should further be noted that a § 6303(a) "violation" occurs 60 days after the assessment. Therefore, if the taxpayer's position were correct, a valid assessment would become invalid on the 61st day after assessment because of the nonoccurrence of an event, i.e. a properly addressed notice and demand. There is nothing to indicate to this Court that such retroactive invalidation was intended or makes any sense at all.

This Court concludes that § 6303(a) was placed in the Code to insure that taxpayers received notice of tax liability so that they could make "voluntary" payment before the I.R.S. could use its lien and levy collection powers. Therefore, the purpose of the statute would be served by preventing the I.R.S. from the exercise of this power where it has not complied with § 6303(a). To go further and eliminate a taxpayer's

---

6. In the case of *Sasscer v. United States,* MJG–91–158 (D.Md.) the Government stated:

"This letter is in response to your order dated May 8, 1991, in which you requested the United States' position as to whether a taxpayer is entitled to a refund on the sole ground that the liability was collected by administrative levy in the absence of a notice and demand. The United States' position is that the taxpayer would be entitled to a refund, as long as he filed his claim for refund with the Internal Revenue Service within two years from the time the funds were administratively collected."

duly determined liability would be neither consistent with the statutory scheme nor sensible.

*The 1980 and 1981 Counterclaim*

■ As to 1980 and 1981, the Government has sued to reduce to judgment the assessments made on January 28, 1985. The taxpayers have defended in reliance on the statute of limitations. In essence, the taxpayers contend that the January 28, 1985 assessments were rendered invalid once 60 days passed without notice and demand. Therefore, they say, the Government could only sue on the underlying tax liability and not on the assessment. Accordingly, since the Counterclaim was filed after the running of limitations for a suit on the liability itself and not the assessment, the taxpayers would be entitled to judgment.[7]

It is the Government's position, with which the Court agrees, that the January 28, 1985 assessment was, and remains, valid and that the Counterclaim was timely filed to reduce the assessment to judgment pursuant to § 6502(a).[8] The Counterclaim is, in effect, a collection suit, which is permitted even though there had been no notice and demand. *Chila, supra, Berman, supra, Marvel, supra.* Thus, the Counterclaim was timely filed and, there being no debate as to the substantive merit of the assessments, the Government is entitled to judgment.

*Conclusion*

For the foregoing reasons, the Court holds in favor of the Government on the Plaintiff's suit for refund for 1979 and on the Government's Counterclaim to reduce its assessments to judgment for 1980 and 1981.

---

**7.** § 6502(a)(1). A suit on the tax liability (*sans* assessment) would be timely if brought within three years from the date the return was filed plus the period of time during which the running of limitations was extended by virtue of the Tax Court litigation. § 6503(a). It appears that this period of limitations would have expired prior to the 1988 filing of the Government's counterclaim in this case.

**8.** The period of limitations for suit on the January 25, 1985 assessments was originally six years and was, in 1990, extended to ten years. Omnibus Budget Reconciliation Act of 1990, § 11317(a)(1), amending IRC § 6502(a).